# 15-2814

## United States Court of Appeals for the Second Circuit



Drew Doscher,

*Petitioner - Appellant*,

v.

Sea Port Group Securities, LLC, Stephen Smith, Michael Meagher, Michael Meyer, The Seaport Group, LLC, Armory Advisers, LLC, Armory Fund, LP, Seaport V, LLC,

*Respondents - Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

### APPELLANT'S BRIEF AND SPECIAL APPENDIX

MEROLLA & GOLD, LLP
*Attorney for Petitioner-Appellant*
75 14th Street, N.W., Suite 2130
Atlanta, Georgia 30309
(404) 888-3772

DICK BAILEY SERVICE (212) 608-7666 (718) 522-4363 (516) 222-2470 (914) 682-0848 Fax: (718) 522-4024
1-800-531-2028 - Email: appeals@dickbailey.com - Website: www.dickbailey.com

# BRIEF

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES……………………………………..….. *v*

PRELIMINARY STATEMENT……………..…………………..…..…  1

QUESTION PRESENTED……………………………………………..  6

JURISDICTIONAL STATEMENT……………………………………  6

STATEMENT OF THE CASE

    A.   Petitioner Sues for Federal Securities Fraud (10b-5)
         After Learning Respondents Renounce His Equity
         Interest in Seaport……………………………………….........  6

         1.  Petitioner Made Seaport an Enormous Success
              Immediately Upon His Hire………………....................  7

         2.  Seaport Grants Petitioner an Equal Interest in its
              Residual Profits…………………………….……………  8

         3.  Seaport's Unethical Behavior Leads to Petitioner's
              Termination in January 2013, Coupled with a
              False Press Release and Cutting Off His Access
              to Records and Email…………………………….....…  10

         4.  Petitioner Had No Choice But to Initiate
              FINRA Arbitration………………………………………  13

    B.   The Arbitral Panel Refused to Enforce Its Own Orders,
         Forcing Petitioner to Try His Case Without Being Given
         Relevant Documentary Evidence in Respondents'
         Exclusive Control………………..……………………  14

         1.  Critical to Petitioner's Securities Fraud Claim is Discovery
              on How Seaport's Internal Accounting and Bookkeeping
              Treated Him Prior to the Compliance Dispute……....…… 15

## Table of Contents (cont'd)

**PAGE**

(a) Seaport's Tax Returns……………………………  16

(b) Seaport's Internal Accounting Records………….  17

(c) Documents Given to Sobel………………………  18

2. The Arbitral Panel Orders Seaport to Produce
   Additional Documentation and Grants a
   Continuance of the Final Hearing………………………  18

3. Respondents Fail to Comply With the Discovery
   Order and Are Again Ordered to Produce………………  20

4. The Truth Comes Out On the Last Day of Trial…………  22

5. Petitioner is Awarded Almost $2.3MM
   and the Counterclaim is Denied…………………………  25

C. Petitioner Files in Southern District to Vacate
   in Part and Modify in Part…………………………………..  25

1. The Entire FINRA Arbitration Record Is
   Ordered Under Seal…………………………………………  27

2. The District Court Denies Petitioner Limited
   Discovery…………………………………………………..  28

3. Respondents Fail to Provide any Substantive
   Opposition to the Petition…………………………………  29

(a) A "Full and Fair Opportunity to Be Heard"
    Does Not Waive the Right to Appeal……………..  29

(b) A Subpoena to Sobel Would Have Been
    a Futile Act – it Was Not Necessary Because
    Respondents Were Ordered to Produce
    and They Controlled Sobel's Nonproduction…….  30

**Table of Contents (cont'd)**

PAGE

   (c) Whether the Arbitral Panel Had
    "Colorable Justifications" for Its Decision
    Misses the Point. Petitioner was Deprived of
    Relevant Documentary Evidence in the
    Control of Respondents……………………………… 32

  D.  Citing *Greenberg* as Controlling Law, the District
     Court Rules the Case Lacks Subject Matter
     Jurisdiction and Orders the Entire Underlying Record
     Remain Under Seal………………………………………… 33

SUMMARY OF ARGUMENT……………………………………….. 33

STANDARD OF REVIEW………………...………………………… 36

ARGUMENT

POINT I  THE DISTRCIT COURT HAS SUBJECT MATTER
      JURISDICTION

  A.  Petitioner's 10b-5 Claim Is an Independent Basis
     for Jurisdiction……………………………………………… 36

    1. District Courts Have Exclusive Jurisdiction
      Over 10b-5 Claims…........................................................ 37

    2. Statutory Construction Mandated This 10b-5
      Claim Be Arbitrated – It Was Not Because of
      a Private Agreement Among Parties……………………. 38

    3. Jurisdiction Over Arbitrations Involving Securities
      Claims Under §78aa is no Different than Jurisdiction
      over Labor Arbitration Awards under §185…………….... 40

  B.  The District Court Has Subject Matter Jurisdiction
     Because Petitioner's 10b-5 Claim is a Federal Claim……… 41

**Table of Contents (cont'd)**

PAGE

1. The Supreme Court Decision in *Vaden* Directs Courts
To "Look Through" to the Underlying Complaint......... 42

2. *Greenberg* Was Nullified By *Vaden*.......................... 43

3. District Court Decisions That Fail to Apply to *Vaden*
to § 10 Petitions are Flawed and Not Applicable ...…..... 44

   (a) The Pre-*Vaden* Cases are Irrelevant..................... 44

   (b) The Post-*Vaden* Cases are Untenable................... 45

C. The District Court Has Subject Matter Jurisdiction
Because the Case Involves a Manifest Disregard
of Federal Law................................................... 49

1. FINRA Rules are Federal Law............................. 49

2. District Court Decisions Concluding Otherwise Are
Also Flawed and Were Abrogated By
*NASDAQ OMX Group* ........................…... 50

D. Judicial Efficacy Demands a Bright-Line Rule for
Section 10 Petitions............................................ 53

1. *Greenberg* is Not the Answer............................. 53

2. *Vaden* Shows the Way..................................... 56

CONCLUSION..................................................….... 59

SPECIAL APPENDIX

   Memorandum-Decision and Order dismissing for lack of subject
matter jurisdiction, dated August 3, 2015 [Doc. No. 54].. SPA1

   Judgment, dated August 5, 2015 [Doc. No. 55]……………… SPA11

# TABLE OF AUTHORITIES

**CASES**                                                           **PAGE**

*Aioi Nissay Dowa Ins. Co Ltd. v. ProSight Speciality
Management Co. Inc.,*
      2012 U.S. Dist. LEXIS 118233 (S.D.N.Y. Aug 21, 2012) ……….. 27

*Anonymous v. Medco Health Solution, Inc.*,
      2014 U.S. App. LEXIS 23645……………………………………….. 28

*Apollo Property Partners, LLC v. Newedge Fin., Inc.*,
      2009 WL 778108 (S.D. Tex. Mar. 20, 2009)……………………... 52

*Appl. Of Prudential Sec. Inc.*,
      795 F. Supp. 657 (S.D.N.Y. 1992)……..…..……………….....….. 52

*Aslin v. FINRA,*
      704 F.3d 475 (7th Cir. 2013)………………………………………… 39

*Barbara v. New York Stock Exch., Inc.,*
      99 F.3d 49 (2d Cir. 1996)…...…………………………………….. 53

*Bittner v. RBC Capital Markers*,
      331 F. App'x 869 (2d Cir. 2009) (Summary Order)………... 3, 35, 43

*Century Indem. Co. v. AXA Belgium,*
      2012 U.S. Dist. LEXIS 136472 (S.D.N.Y. Sept. 24, 2012)……… 49

*Christensen v. Nauman*,
      73 F. Supp. 3d 405 (S.D.N.Y. 2014)   …………………… 13, 38, 50

*Cofinco, Inc. v. Barkie & Bros.*,
      395 F. Supp. 613 (S.D.N.Y. 1975)……………………………….. 26, 30

*Cohen v. UBS Financial Services, Inc.,*
      2015 U.S. App. LEXIS 11184 (2d Cir. June 20, 2015)
      (Summary Order)……..……………………………………….. 13, 39

## Table of Authorities (cont'd)

**CASES**                                                      **PAGE**

*Crews v. S & S Serv. Ctr. Inc.,*
    848 F. Supp. 2d 595 (E.D. Va. 2012)……………….…...……… 47-48

*DiRussa v. Dean Witter Reynolds Inc.,*
    121 F.3d 818 (2d Cir. 1997)…………………………………..     28

*Drexel Burnham Lambert, Inc. v. Valenzuela Bock,*
    100 F.3d 263 (2d Cir. 1996)………………………...  44-45, 52, 58-59

*Dreyfus Serv. Corp. v. Gold,*
    2002 WL 31802347 (S.D.N.Y. Dec. 12, 2002)………………..…   52

*Fin. Indus. Regulatory Auth., Inc. v. Fiero,*
    10 N.Y.3d 12 (2008)……………………………………….  35, 37, 55

*Ford v. Hamilton Invs., Inc.,*
    29 F.3d 255 (6th Cir. 1994)………...……………………………   51

*Fox v. Faust,*
    239 F. App'x 715 (3d Cir. 2007) (Summary Order)……………...   46

*General Drivers, Warehousemen & Helpers, Local Union No. 89 v.*
*Riss & Co., Inc.,*
    372 U.S. 517 (1963)…………………….………………………… 40-41

*Goetz v. Crosson,*
    728 F. Supp. 995 (S.D.N.Y. 1990)…………………………………   30

*Goldman, Sachs & Co. v. Athena Venture Partners,*
    2015 U.S. App. LEXIS 17122 (3d Cir. Sept. 29, 2015)... 38, 46-48, 51

*Goldman v. Citigroup Global Markets Inc.,*
    2015 WL 2377962 (E.D. Pa. May 19, 2015)…………..……...  46, 51

# Table of Authorities (cont'd)

**CASES**                                                        **PAGE**

*Greenberg v. Bear Stearns & Co.,*
220 F.3d 22 (2d Cir. 2000)……………………………... passim

*Guisti v. Morgan Stanley Smith Barney, LLC,*
581 F.App'x 34 (2d Cir. 2014) (Summary Order)………… 3, 35, 43

*Hakala v. Deutsche Bank AG,*
343 F.3d 111 (2d Cir. 2003)…….………………………….... 55

*Harry Hoffman Printing, Inc. v. Graphic Communications, Int'l Union, Local 261,*
912 F.2d 608 (2d Cir. 1990)…………………………………… 36, 40

*Home Indemnity Co. v. Affiliated Food Distrib.,*
1997 U.S. Dist. LEXIS 19741 (S.D.N.Y. Dec. 12, 1997)….. 25, 30, 54

*Intervest Intern. Equities Corp. v. Baerlich,*
3013 WL 1316997 (E.D. Mich. Mar. 29, 2013)…………...…… 51

*Istithmar World PJSC v. Amato,*
2013 U.S. Distr. LEXIS 2205 (S.D.N.Y. Jan. 7, 2013)………... 27

*Jock v. Sterling Jewelers,*
646 F.3d 113 (2d Cir. 2011)…………………………………… 26

*Kallen v. Gistrict 1199, Nat'l Union of Hosp. and Health Care Employees,*
574 F.2d 723 (2d Cir. 1978)………………….……………..... 41

*Karsner v. Lothian,*
532 F.3d 876 (D.C. Cir. 2008)…………………………………… 39

*Kasap v. Folger Nolan Fleming & Douglas, Inc.,*
166 F.3d 1243 (D.C. Cir. 1999)………………….…….... 44-45, 56

# Table of Authorities (cont'd)

**CASES**                                                 **PAGE**

*Life Receivables Trust v. Synidcate 102*,
    549 F.3d 210 (2d Cir. 2008)……………………………………....  31

*Local 802, Associated Musicians of Greater New York v. The Parker Meridian Hotel*,
    145 F.3d 85 (2d Cir. 1998)………...………………………………  40

*Lugosch v. Pyramid Co. of Onondaga*,
    435 F.3d 110 (2d Cir. 2006)………………………………………  27

*Malik v. Meissner,*
    82 F.3d 560 (2d Cir. 1996)………………………………………..  37

*Matsushita Elec. Indus. Co. v. Epstein*,
    516 U.S. 367 (1996)………………………………………………  41

*Med-Tel Int'l Corp. v. Loulakis*,
    403 F. Supp. 2d 496 (E.D. Va. 2005)…………………………..  47-48

*Mims v. Arrow Fin. Servs., LLC*,
    132 S. Ct. 740 (2012)…….……………………………………..  37

*Minor v. Prudential Sec., Inc.,*
    94 F.3d 1103 (7th Cir. 1996)……………….………………..  44-45

*NASDAQ OMX Group, Inc. v. UBS Sec., LLC*,
    770 F.3d. 1010 (2d Cir. 2014)..…………………………  38, 51-52

*NDA Investment Company v. Apex Clearing Corporation*,
    2015 U.S. Dist. LEXIS 3810, 14cv923-RMB (Jan. 8. 2015)……….  52

*Newsday LLC v. County of Nassau*,
    730 F.3d 156 (2d Cir. 2013)…….……………………………  28

*NFL Mgmt. Council v. NFL Players Ass'n,*
    2015 U.S. Dist. LEXIS 119283 (S.D.N.Y. Sept. 3, 2015)………...  54

## Table of Authorities (cont'd)

**CASES**                                                                    **PAGE**

*Nykcool A.B. v. Pac. Fruit, Inc.*,
   507 Fed. Appx. 86 (2d Cir. N.Y. 2013) (Summary Order)…...…… 26

*Prudential-Bach Securities, Inc. v. Fitch*,
   966 F.2d 981 (5ᵗʰ Cir. 1992)………………………………… 44-45, 59

*Retail Clerks v. Lion Dry Goods, Inc.,*
   369 U.S. 17 (1962)…………………………………………………... 41

*Royal Bank Am. V. Kirkpatrick*,
   2011 WL 4528349 (E.D. Pa. Sept. 30, 2011)………………… 46-48

*Sacks v. Dietrich,*
   663 F.3d 1065 (9ᵗʰ Cir. 2011)………………….…..……………… 53

*Sacks v. SEC,*
   648 F.3d 945 (9ᵗʰ Cir. Aug. 8, 2011)……………………………... 39

*Smiga v. Dean Witter Reynolds, Inc.,*
   766 F.2d 698 (2d Cir. 1985)……………………………………… 39

*Smith Barney, Inc. v. Sarver*,
   108 F.3d 92 (6ᵗʰ Cir. 1997)…………………………………….. 45

*Sonic Auto, Inc. v. Price,*
   2011 WL 3564884 (W.D.N.C. Aug 12, 2001)………………… 47-48

*Tempo Shain Corporation v. Bertek*,
   120 F.3d 16 (2d Cir. 1997)…………………………………….. 54-55

*Trustees of Local Union No. 580 of Int'l Ass'n of Bridge, Structural,
Ornamental & Reinforcing Iron Workers Employee Ben. Funds v. Gen.
Fence Corp.,*
   2014 WL 1800428 (E.D.N.Y. May 5, 2014)…………………… 47-48

## Table of Authorities (cont'd)

**CASES**                                                     **PAGE**

*UBS Fin. Servs. v. W. Va. Univ. Hosps., Inc.*,
   660 F.3d 643 (2d Cir. N.Y. 2011)……………………………..  35, 38

*United Steelworkers v. American Mfg. Co.,*
   363 U.S. 564 (1960)……………………………………………  41

*Vaden v. Discover Bank*,
   556 U.S. 49 (2009)………...…………………………..…  passim

*Wall Street Assocs., L.P. v. Becker Paribas Inc.*,
   27 F.3d 845 (2d Cir. 1994)……………………………………..  29

*Westmoreland Capital Corp. v. Findlay,*
   100 F.3d 263 (2d Cir. 1996)……...…………………….........  passim

*Will v. Calvert Fire Ins. Co.,*
   437 U.S. 655 (1978)……………………………………………  38

## FEDERAL STATUTES

9 U.S.C.
   § 4………………………………………………………….  passim
   § 10..…………………………………………………..………  passim
   § 11...…………………………………………………………  26

15 U.S.C.
   § 78f..………………………………………………………....  51
   § 78o-3……………………………………………………....  35, 38
   § 78s..…………………………………………....………..  13, 35, 38, 50
   § 78aa……………………………………………………….  passim

28 U.S.C.
   § 1291……..…………………………………………………..  6
   § 1331……..…………………………………………………  6, 36
   § 1367……..…………………………………………………..  6

**Table of Authorities (cont'd)**

**PAGE**

29 U.S.C. § 185…………………………………………… 2, 34, 40-41, 54

Internal Revenue Code §7872...……………………………………… 9

**FEDERAL RULES AND REGULATIONS**

Exchange Act Rule 10b-5………………………………….... passim

FINRA Rule 12504….…………………………………………. 52

FINRA Rule 13200….…………………………………… 13, 39

FINRA Rule 13505………………………..……... 14, 23-24, 26, 35

FINRA Rule 13507….…………………………………... 26

FINRA Rule 13513….…………………………………... 24

**STATE STATUTES**

NY CPLR § 205(a)….……………………………………... 55

## PRELIMINARY STATEMENT

This case is about subject matter jurisdiction – whether the district court had it to determine a petition to vacate a FINRA arbitration award largely concerning a federal securities fraud 10b-5 claim. Petitioner was the largest earner for a closely-held Wall Street firm during his four year tenure. Seaport gave him an equal interest in its residual profits in 2010 on par with its few other owners. Petitioner led Seaport to quadruple in size of employees, and triple in terms of revenue – nearing $100MM in his last year. During that time the profits of the company were regularly reinvested to morph Seaport's footprint from a little known broker-dealer to a mature international player with offices in London.

Seaport terminated Petitioner in January 2013 after a contentious conflict of interest issue went unresolved. Seaport then published a false press release with Bloomberg News. They cut-off all access to business records and e-mail. Then withheld his bonus for 2012. And only after arbitration commenced did Seaport claim he forfeited his 3-year old equity interest because he never signed a written operating agreement – an agreement promised to be delivered within the following two-weeks, just three days before his termination.

Petitioner received nearly $2,300,000 and a dismissal of the $821,707.26 counterclaim against him after a two week trial. In January 2014, he filed a Petition to vacate and modify the award in Southern District.

Vacatur is warranted under Section 10(a)(3) of the Federal Arbitration Act ("FAA") for two reasons. First, the arbitrators failed to insure that relevant documentary evidence in the hands of Respondents (their internal accounting records and tax returns) was fully and timely made available to Petitioner. This despite repeated orders to do so. Second, the arbitrators acted in a manifest disregard of the law – FINRA Rules that mandate "the parties must cooperate to the fullest extent practicable in the exchange of documents and information to expedite the arbitration." The district court dismissed this case for lack of subject matter jurisdiction. It held that notwithstanding the Supreme Court decision *Vaden v. Discover Bank*, 556 U.S. 49 (2009), it was bound by this Circuit's decision *Greenberg v. Bear Stearns & Co.*, 220 F.3d 22 (2d Cir. 2000). *Greenberg* held a court may not "look through" to the underlying claims when determining subject matter jurisdiction.

But Section 78aa of the Exchange Act confers exclusive jurisdiction in the district courts. This case concerned a count for securities fraud in violation of Section 10(b) of the Exchange Act and Rule 10b-5. Just as district courts have subject matter jurisdiction over labor arbitration awards under 29 U.S.C. § 185, so too for arbitrations concerning securities claims under 15 U.S.C. § 78aa.

In two prior Summary Orders since the Supreme Court's watershed decision in *Vaden* (involving a Section 4 petition to compel), this Court determined that a

district court is to "look through" the underlying pleadings to determine subject

matter jurisdiction regarding a petition to vacate under Section 10(a) of the FAA.

*See Bittner v. RBC Capital Markets*, 331 F. App'x 869 (2d Cir. 2009) (Summary

Order) and *Guisti v. Morgan Stanley Smith Barney, LLC*, 581 F. App'x 34 (2d Cir.

2014) (Summary Order). While the district court acknowledged these two

decisions, it held that because those were not precedential opinions, it was

therefore bound by *Greenberg*. This in spite of acknowledging that the sole basis

for the holding in *Greenberg* was this Court's decision in *Westmoreland Capital*

*Corp. v. Findlay*, 100 F.3d 263 (2d Cir. 1996), which was abrogated by *Vaden*.

 Dismissal of this case based on *Greenberg* is clear error. *Greenberg*

involved a Section 10 petition to vacate an existing award and invoked the

reasoning of *Westmoreland* – a case involving a Section 4 petition to compel.

*Westmoreland* held that a court may not "look through" the petition and focus on

the underlying dispute. *Greenberg* found "[t]he holding in *Westmoreland* logically

extends to motions to vacate an arbitration award under § 10 of the FAA." If that is

the case, and *Greenberg* remains the standard in the Second Circuit, the rejection

of *Westmoreland* by *Vaden* mandates reversal in this case: because "[t]he holding

in ~~*Westmoreland*~~ [*Vaden*] logically extends to motions to motions to vacate an

arbitration award under § 10 of the FAA."

The Supreme Court made clear that a district court is to "look through" the underlying pleadings to determine subject matter jurisdiction. Petitioner's 10b-5 securities fraud claim satisfies that inquiry. He is entitled to have his case determined on the merits by the district court.

Petitioner was required to arbitrate this dispute because he is a licensed "Associated Person" under FINRA's rules. He was not permitted to pursue his claims in a court of law. He asserts compelling grounds to vacate in part the arbitration award related to his securities fraud claim. While Respondents raised subject matter jurisdiction within 14 days of the initial Petition, the district court chose to address the issue only after ordering the parties to submit the entire matter on papers akin to summary judgment. Six months later, and after 200 pages of briefs and supporting papers, the district court determined it did not have subject matter jurisdiction because of *Greenberg*.

Apart from the misplaced reliance on *Greenberg*, the district court offered little in the way of supporting its conclusion it lacked subject matter jurisdiction. All of its cited authority based their decisions on cases like *Westmoreland* and its ilk – the reasoning of which were resoundingly rejected by all 9 Supreme Court Justices in *Vaden*.

If *Greenberg* is controlling, that begs the question of when exactly is a "substantial federal question" present in a Section 10 petition to vacate. Only in

maritime cases? What about diversity cases? Just cases involving a manifest disregard of federal law? Even though "manifest disregard of federal law" is in fact a separate and independent ground to vacate, in addition to the four statutory bases stated in Section 10? And why exactly should there be a different result post-*Vaden* when *Greenberg* found "[t]he holding in *Westmoreland* logically extends to motions to vacate an arbitration award under § 10 of the FAA?"

*Greenberg* only permits jurisdiction for a Section 10 petition to vacate in diversity case, those arising in admiralty, and where "federal law is manifestly disregarded." After *Vaden*, this is an untenable result. *Greenberg* is simply not controlling in this case. The overwhelming weight of authority establishes that a district court has subject matter jurisdiction for the purposes of a Section 10 motion to vacate when: (1) an "independent basis" for jurisdiction exists apart from the FAA; (2) the underlying dispute, the complaint/statement of claim, could have been brought in federal court – be that based on diversity, maritime law, or federal question; or (3) a substantial issue of federal law exists. In this case, all three are present.

A clear standard should be now entered. A standard consistent with *Vaden*. Consistent with statutory construction. And consistent with fairness for the litigants that district courts can evenly apply in the future. The district court has subject matter jurisdiction in this case. The judgment below should be reversed.

## QUESTION PRESENTED

Whether the District Court erred in determining it lacked subject matter jurisdiction to rule on the merits of the case.

## JURISDICTIONAL STATEMENT

The district court has jurisdiction over this action under 15 U.S.C. § 78aa, 28 U.S.C. § 1331, and 28 U.S.C. § 1367. This Court has jurisdiction over the appeal under 28 U.S.C. § 1291. The opinion and order appealed from was entered on August 3, 2015 (SPA1-10).[1] Final judgment was entered on August 5, 2015 (SPA11). Petitioner filed his notice of appeal on September 2, 2015 (SPA12).

## STATEMENT OF THE CASE

### A. Petitioner Sues for Federal Securities Fraud (10b-5) After Learning Respondents Renounce His Equity Interest in Seaport.

This matter concerns Petitioner's termination in January 2013. (A130.1, Ex. 5).[2] For the three prior years working for The Seaport Group, LLC and its affiliates

---

[1] Citations to A__ are to documents in the Appendix and citations to SPA__ are to documents in the Special Appendix.  References to Doc. # are to documents filed in the District Court and are designated by the document number set forth on the docket sheet, reproduced at A1-9, and assigned to that document by PACER.

[2] The underlying exhibits were attached to the Declarations of A. Todd Merolla dated January 19, 2015 and January 20, 2015 on an electronic disk. (A130-159). These disks are provided to this Court and identified at A130.1.  References to the underlying record will show a designation of A130.1, Ex. __, p. __) – The "Ex. __" will correspond to the Exhibit to the January 19, 2015 Declaration, and the "p. __" will correspond to the appropriate page number).  References to these Declarations are made in this manner ("Merolla Dec., Ex.__, p.__") throughout the Petition and supporting briefs before the district court.

("Seaport"), he enjoyed a 20-25% interest in Seaport's residual profits. (A130.1, Ex. 27, p. 91-94). Starting in 2010, Petitioner was given a capital account to evidence that interest. (*Id*., p. 86-92). He was periodically given statements showing his capital account balance being between $500K and $1.5MM over the three years prior to his termination. (A130.1, Ex. 20, p. 2). At the time of termination, Seaport's founder told Petitioner: "You will be paid everything that is owed to you. Do not have any concern in that regard." (A130.1, Ex. 219, p. 12). Seven months later, after refusing to pay his previous year's bonus well in excess of $1MM, Respondents for the first time asserted Petitioner was not entitled to the monies evidenced by his capital account because he never signed an operating agreement – in its formal answer to the FINRA arbitration. (A130.1, Ex. 3, p. 10). Petitioner then filed an amended statement of claim to include a federal securities fraud 10b-5 claim. (A130.1, Ex. 5).

### 1. Petitioner Made Seaport an Enormous Success Immediately Upon His Hire.

First employed in June 2009, Petitioner was primarily responsible for growing Seaport from roughly 40 employees to 220 at his termination. (A130.1, Exs. 5 and 27, p. 40-58). Petitioner was initially paid on a pure commission basis. (*Id.*, p. 69-82). He was the number one producer for Seaport from 2009 through 2012 and the "leader of the company." (A130.1, Ex. 30, p. 825). His production numbers exceeded the combined amounts of the other three partners – Respondents

Meagher, Smith, and Meyer – and realizing his earning power, Seaport founders

Meagher and Smith soon sought to make Petitioner (and Meyer) "partners" in

Seaport.  (A130.1, Ex. 27, p. 86-92).  That happened the following year.

### 2. Seaport Grants Petitioner an Equal Interest in its Residual Profits.

In 2010, Seaport made Petitioner and Meyer "Co-Heads of All Sales and

Trading" for Seaport.  (*Id.*)  They were held out to Seaport's employees and clients

as "partners" – as noted on Petitioner's business card (A130.1, Ex. 36).  They were

given American Express "Black" cards for business and personal expenses.

(A130.1, Ex. 27, p. 88-89). And they were also given a capital account –

representing the book value of their residual equity interest in the profits of all of

Seaport's operations.  (*Id.*, p. 86-92, 94).  Neither Petitioner nor Meyer was ever

asked to execute any operating agreement as a pre-condition to receiving their

capital account and equity interest.  (*Id.*, p. 91-92). Meagher admitted at trial that

Petitioner was never informed that his capital account and equity interest would

evaporate if he ever separated from Seaport.  (A130.1, Ex. 30, p. 985).

Seaport admits the equity interest was given in 2010.  (A130.1, Ex. 6, p. 8-

10). Seaport admits the equity interest was "tracked" over the following two years.

(*Id.*) But now it contends that "because Mr. Doscher chose not to become a

member of Seaport he was not entitled to any monies in that account." (*Id.*)

Seaport's CFO initially told Petitioner that his personal expenses on the Black Card would be taken out of his commissions. (A130.1, Ex. 27, p. 86-92). But then later said it would be deducted from his capital account balance. (*Id.*) At no point prior to his termination did Seaport deduct personal expenses from his commissions. (A130.1, Ex. 33, p. 1696). Or so much as ask reimbursement for $821,707.26 in personal expenses from 2009 through 2012. (*Id.*) This includes a $252,577.50 wire Seaport sent directly from its business account in July 2012 that Petitioner understood was being deducted from his capital account. (A130.1, Exs. 193, 265 and 267).

But in the arbitration Seaport sought to recover those amounts. Seaport asserted all of those charges were an undocumented "loan" to Petitioner over that 3-year period. (A130.1, Ex. 3). Had Petitioner been a mere employee of Seaport instead of an equity owner, that "loan" would have violated Internal Revenue Code §7872. (A130.1, Ex. 34, p. 1911-1915).

Petitioner was also involved in all the Seaport decisions to reinvest the extraordinary income he generated from 2010-2012. (A50-51). For example, Petitioner led Seaport's investment in opening an office in Montauk – an extreme success. (A1301.1, Ex. 27, p. 117-118). As another example, Petitioner was the only "partner" with global banking experience – he single handedly led Seaport to expand its footprint to open an office in London. (*Id.*, p. 106-107). The license

alone cost over $3,000,000. (*Id.*, p. 107-114). It was paid for with Petitioner's share of Seaport's 2010/2011 profits. (*Id.*) Petitioner was appointed director of the European Seaport entity. (*Id.*)

In 2010, Petitioner's equity interest was 20% – Seaport's partners consisted of Meagher, Smith, Petitioner, Meyer, and Mark Miller. (*Id*., p. 91-92). After Miller resigned in 2012, Petitioner enjoyed an equal 25% interest. (*Id.*, p. 92-93).

### 3. Seaport's Unethical Behavior Leads to Petitioner's Termination in January 2013, Coupled with a False Press Release and Cutting Off His Access to Records and E-mail.

In April 2012, Meagher and Smith wanted Petitioner and Meyer to execute a written Seaport operating agreement. Petitioner retained a forensic accounting firm (Sobel & Co.) jointly with Meyer to assist them review certain reporting and compliance aspects of the Seaport entities. (A130.1, Ex. 208). Over the next seven months, Sobel received a multitude of documents from Seaport and its accountants (Povol & Feldman) on three occasions: (1) certain financial documents delivered from Seaport's attorney in May; (2) a "thumb drive containing electronic documents that [Sobel] previously requested" from Povol & Feldman in June; and (3) other documentation related to an on-site examination of Seaport's computer systems in September. (A130.1, Ex. 17, p. 15). As indicated in a December memorandum from Sobel, this included "full access" to Seaport's electronic version of Quickbooks. (A1301.1, Ex. 209). The memo noted that "the accuracy

of the allocation of income cannot be easily determined and more transparency should be afforded to the potential members." (*Id.*)

During this time, a significant dispute arose regarding certain activities by Smith believed to violate the applicable FINRA Front Running Policy at the time. (A130.1, Exs. 5, 27, p. 132-267, 29, p. 551-591). As Seaport's Co-Head of Sales and Trading, Petitioner was concerned about his Series 24 license. (*Id.*) He believed his license was compromised after Smith lied to him on two occasions that Seaport's Investment Bankers would no longer engage in certain activity. (*Id.*) Petitioner himself was accused of being a liar by two clients, and demanded Seaport terminate the employment of the banker engaging in activities that violated agreed-upon protocol. (*Id.*) He threatened to resign if that did not occur. (*Id.*)

In the first week of January 2013, Meagher organized an off-site meeting with the three other Seaport partners – Smith, Petitioner, and Meyer – to discuss "many open items issues regarding our partnership and all of the different business lines at Seaport." (A130.1, Ex. 145). Petitioner was unable to attend the off-site meeting because of the flu, at which Meagher agreed to deliver a new "streamlined draft" operating agreement within the next two weeks for Petitioner and Meyer to review. (A130.1, Ex. 147).

Over the next three days the compliance issues remained contentious.[3] (A130.1, Ex. 29, p. 555). Petitioner was then terminated as a Seaport employee before ever seeing Meagher's "streamlined draft." (A130.1, Ex. 27, p. 131-132, Ex. 264, Ex. 29, p. 347-357). While it is true that Petitioner threatened to resign, and had a history of making such threats, he never in fact did so. (A1301.1, Ex. 31, p. 986). Unbeknownst at the time, Seaport was coordinating a manufactured "acceptance of a resignation" with a public relations consultant and coordinated press coverage of the event. (A130.1, Exs. 148 and 149). That press release to Bloomberg News falsely claimed it "accepted" Petitioner's resignation. (*Id.*)

Just as Seaport issued the press release, its founder told Petitioner:

> **You will be paid everything that is owed to you. Do not have any concern in that regard.**

(A130.1, Ex. 219, p. 12).

They then immediately turned off his e-mail. (A1030.1, Ex. 27, p. 131-132, Ex. 264, Ex. 29, p. 347-357). They refused to let him to collect his belongings. (*Id.*) And Seaport only paid after FINRA issued an award a year-and-a-half later following a two-week trial. (A10).

---

[3] At the arbitration final hearing eighteen months later, Securities Law and Compliance expert George Brunelle testified that Petitioner's concerns were absolutely justified. Seaport's actions constituted a violation of the Best Execution Rule and a conflict of interest that should have been self-reported by Seaport to FINRA. (A130.1, Ex. 33, p. 1737-1789).

### 4. Petitioner Had No Choice But to Initiate FINRA Arbitration.

This case was arbitrated due to federal statutory construction. It was not based on a private contract among the parties.

FINRA is a self-regulatory organization that sponsors an arbitration forum. *Cohen v. UBS Financial Services, Inc.*, 2015 U.S. App. LEXIS 11184, at *4 (2d Cir. June 30, 2015) (Summary Order), *citing* Securities and Exchange Commission Release No. 34-56145, 72 Fed. Reg. 42169, 42288-89 (Aug. 1, 2007). The SEC must approve of all FINRA's rules. 15 U.S.C. § 78s(b)(1). The SEC may abrogate, add to, and delete from all FINRA rules it deems necessary. 15 U.S.C. § 78s(c).

All securities firms and employees thereof must register with FINRA, thus becoming members of FINRA. *Christensen v. Nauman*, 73 F. Supp. 3d 405, 410-411 (S.D.N.Y. 2014). "Membership in FINRA constitutes an agreement to adhere to FINRA's rules and regulations, including its Code and relevant arbitration provisions contained therein." *Id*., at 411. As licensed broker, Petitioner was an "Associated Person" under FINRA's rules, and was required to arbitrate this dispute. FINRA Rule 13200. He did.[4]

Petitioner asserted a variety of legal and equitable claims – including securities fraud – regarding his compensation and equity interest. (A130.1, Ex. 5).

---

[4] FINRA required the parties to execute submission agreements. (A76-79).

**B.** **The Arbitral Panel Refused to Enforce Its Own Orders, Forcing Petitioner to Try His Case Without Being Given Relevant Documentary Evidence in Respondents' Exclusive Control.**

FINRA's rules of arbitration mandate that "the parties must cooperate to the fullest extent practicable in the exchange of documents and information to expedite the arbitration." FINRA Rule 13505. Instead, Respondents and their counsel were permitted to delay and deny Petitioner access to relevant documentary evidence – evidence that prejudiced him. Petitioner was denied a fair trial in the final arbitration hearing concerning his equity interest claims as a direct result of the fraud and deceit perpetrated by the Respondents and their counsel.

Respondents were ordered twice to produce critical information and documentation that were in their complete custody and control. (A130.1, Exs. 21 and 25). Respondents obfuscated the exchange of information and made outright misrepresentations regarding facts otherwise known to be true. (A56-58). These came to bear at the very end of a two week trial. (*Id*.) When presented with the uncontroverted evidence prior to closing argument, the Arbitral Panel initially ordered further production. (A130.1, Ex. 35, p. 2091-2092). But it ultimately refused to enforce its own orders. It ruled on the merits without any consequence to Respondents' willful violations. (A130.1, Ex. 1). Petitioner was deprived his basic right to present and test evidence at trial. Vacatur is warranted pursuant to Section 10(a)(3) of the FAA and a manifest disregard of the law.

**1. Critical to Petitioner's Securities Fraud Claim is Discovery on How Seaport's Internal Accounting and Bookkeeping Treated Him Prior to the Compliance Dispute.**

Seaport's surprising contention in its answer that Petitioner forfeited the amounts in his capital account was contradicted by the previous 3-year course of conduct. Petitioner thus sought discovery related to Seaport's internal accounting and bookkeeping from several sources. First, he served document requests on the Respondents. (A130.1, Exs. 7 and 9). Second, he sought non-party subpoenas be issued to Seaport's accountants Povol & Feldman. (A130.1, Exs. 17 and 22). Third, he asked his own forensic accounting firm (Sobel) deliver a complete copy of their files from the 2012 Seaport audit. (A130.1, Ex. 22, Exhibit 7 thereto). Sobel refused for unstated reasons at the time.

Petitioner sought the following from Respondents within the arbitration regarding his capital account and equity interest:

- Seaport's tax returns for 2009 through 2012;

- Seaport's internal accounting records in Quickbooks files;

- All documents delivered to Sobel during its 2012 audit;

- Pre-trial depositions to assist streamline the issues for trial; and

- Non-party subpoenas on Seaport's accountants, Povol and Feldman, to receive Seaport's filed state and federal tax returns.

(A130.1, Exs. 17, 22).

(a)    **Seaport's Tax Returns**

Respondents initially only produced K-1's for the members of Seaport. This forced Petitioner to file a motion to compel because the tendered documents were significantly inconsistent with other bookkeeping records. For example, the capital account balances contained in the K-1's did not match the balances delivered in spreadsheets prepared by their accountants Povol & Feldman.  (A130.1, Ex. 17, p. 2). Those documents listed Petitioner having capital account balances of:

**$1,422,200.18 as of November 30, 2010**
**$500,638.90 as of December 31, 2010**
**$682,178.83 as of December 31, 2011**
**$821,226.88 as of December 31, 2012**

(A130.1, Ex. 20, p. 2).

Meanwhile, the capital account allocations for Respondents Meagher and Smith showed the following balances:

|  | Meagher | Smith |
|---|---|---|
| December 31, 2010 | $7,466,596.62 | $5,391,968.17 |
| December 31, 2011 | $6,801,316.63 | $5,208,046.57 |
| December 31, 2012 | $5,046,172.07 | $3,171,756.17 |

However, the purported K-1's delivered to the IRS for for these years attested to the following balances:

|  | Meagher | Smith |
|---|---|---|
| December 31, 2010 | $8,352,704.00 | $6,294,079.00 |
| December 31, 2011 | $9,385,719.00 | $7,808,452.00 |
| December 31, 2012 | $6,398,658.00 | $4,540.242.00 |

(A130.1, Ex. 17, p. 11-12).

Even more curious on the K-1's produced, was the inconsistency with the opening

and ending capital account balances. For example:

|  | Meagher | Smith |
|---|---|---|
| Beginning balance (1/1/10) | $6,122,811.00 | $5,779,476.00 |
| Ending balance (12/31/10) | $8,352,704.00 | $6,294,079.00 |
| Beginning balance (1/1/11) | $7,993,055.00 | $5,934,433.00 |
| Ending balance (12/31/11) | $9,385,719.00 | $7,808,452.00 |
| Beginning balance (1/1/12) | $9,914,895.00 | $8,337,622.00 |
| Ending balance (12/31/12) | $6,398,658.00 | $4,540.242.00 |

(*Id.*)

In addition to the $300K - $600K gaps from December 31 to January 1, the 2011

K-1's indicated they were amended returns. (*Id.*) Respondents objected to

producing the complete tax returns. (A130.1, Ex. 19)

### (b)   **Seaport's Internal Accounting Records**

The motion to compel also sought the production of Seaport's native

QuickBooks accounting files. Respondents opposed:

> Claimant's unsupported argument that this information "can be easily
> produced by burning a copy of the QuickBooks files on a disk" (Mot. 13) is
> wrong – this information, as one would expect, is voluminous and most of it
> in no way concerns this case.

(A130.1, Ex. 19, p. 3).

This statement was ultimately proven to be false by two Seaport witnesses. First,

Seaport's CFO/Chief Compliance Officer testified on the second to last day of

evidence that he would send QuickBooks files to Povol & Feldman "in backups"

on a regular basis, which Povol could then "load into QuickBooks on their side." (A130.1, Ex. 33, p. 1698, 1702). Second, Povol testified on the last day of evidence that "there's a way to cut the years" for a QuickBooks file. (A130.1, Ex. 34, p. 1923).

### (c)     Documents Given to Sobel

The motion also sought an Order compelling Respondents to produce all documentation and information they made available to Sobel during its audit in 2012. (A130.1, Ex. 17). This is critical because Petitioner was still an employee at Seaport – months before the dispute arose that resulted in his termination.  (*Id.*, p. 14-15). Prior to filing the motion, Petitioner asked Respondents to reconsider their position and simply produce the documentation delivered to Sobel. (*Id.*, p. 15). Respondents were only willing to produce the documents delivered on May 7, 2012. (*Id.*)

## 2.     The Arbitral Panel Orders Seaport to Produce Additional Documentation and Grants a Continuance of the Final Hearing.

The Arbitral Panel granted the motion, compelling the Respondents to produce a significant amount of additional documentation.  (A130.1, Ex. 21).  It also granted a request to adjourn the final hearing in light of the ordered discovery. (*Id.*).  It did so over the objection of Respondents, whom asserted there was no

reason to change the hearing date. (A130.1, Ex. 19, p. 10). The Order compelled

Seaport to produce:

- Seaport's tax returns for 2009 through 2012;

- Seaport's internal accounting records in Quickbooks files "in native format, unredacted with metadata intact," and

- All documents delivered to Sobel.

(A130.1, Ex. 21).

The request for pre-trial depositions and non-party subpoenas was denied.

(*Id.*) So too was Petitioner's request for an Order directing Seaport to execute IRS

Form 4506 to allow the retrieval of their actually filed tax returns directly from the

IRS – if any. (*Id.*) Respondents asserted in opposition: "All of the questions

counsel describes as topics for deposition can be explored at the hearing." (A130.1,

Ex. 19, p. 9). For the subpoenas: "Respondents have produced responsive

documents from Povol & Feldman, Seaport's accountants." (*Id.*)

It came out at trial that not only were there multiple tax returns for the same

year, but not a single Respondent witness could identify which tax returns and K-

1s were actually filed with the IRS. (A130.1, Ex. 30, p. 886). For example, when

Seaport's tax-matters partner, Cornell Law graduate Michael Meagher was

confronted with two (2) separate K-1s for 2009 that were produced during

discovery and contained significantly different financial information, he was

puzzled:

> A:     I'm really confused.  Why would there be two K-1s for 2009.  We would have filed one K-1 for 2009 that would be a part of our tax return.  I don't know why there would be two.
>
> Q.     I don't know why either.  I don't know why one would be different after a motion to compel.

(A130.1, Ex. 30, p. 886).

Also at trial, Smith testified that he was "not surprised" that two different tax returns were delivered during discovery, because "you have tax accounting and partnership accounting."  (A130.1, Ex. 32, p. 1308-1309).  And on the last day of evidence, counsel admitted that two of the tax returns delivered in discovery – those given directly to Sobel – were not even filed with the IRS.  (A130.1, Ex. 34, p. 1942-1943).

### 3.     Respondents Fail to Comply With the Discovery Order and Are Again Ordered to Produce.

The supplemental production regarding the internal accounting reports did not consist of QuickBooks files "in native format, unredacted with metadata intact." Seaport instead produced Excel spreadsheets that were exported from Seaport's Quickbooks files in direct violation of the discovery Order. (A130.1, Ex. 22). Petitioner filed a motion for sanctions. (*Id.*)

Regarding the lack of production of the Quickbooks files given to Sobel, counsel represented:

> We said that neither Respondents nor their accountants, Povol & Feldman, had a copy of *or knew* what documents were on the "thumb drive" provided to Sobel in June 2012.

(A130.1, Ex. 23, p. 1-2, emphasis supplied).

But at trial four months later, Povol testified that he gave Seaport's QuickBooks file to Sobel in June 2012. (A130.1, Ex. 34, p. 1949).

Concerning the order to produce documents provided to Sobel in June 2012 and September 2012, Respondents stated:

> Claimant requested a "thumb drive" provided to Sobel on June 13, 2012 (April 24 Ltr. At 15) and Respondents (and their accountants) are not withholding it. **We do not have it or a list of what was on it**. The only entity that may have the thumb drive is Claimant's own accountants, Sobel. Claimant has a fee dispute with Sobel and now filed a securities fraud lawsuit against Sobel. This arbitration should not be put off because of **Claimant's fee dispute** or fraud lawsuit. **These are not Respondents' issues** and Claimant should not use them to try to obfuscate this case, particularly when Claimant never asked this Panel for a subpoena to Sobel.

(A130.1, Ex. 23, p. 2, emphasis supplied).

But at trial four months later, Seaport's Meyer testified that he and Meagher were involved in the decision to not consent to Petitioner receiving his file from Sobel. (A130.1, Ex. 40, p. 1528-1529). So while counsel was arguing to the Arbitral Panel that Petitioner had only himself to blame for not getting Sobel's file, the exclusive reason for not turning over its file was because of Seaport's direction. There was no "fee dispute" with Sobel as of the date of these objections because Seaport in fact paid off the outstanding balance in December 2013. (A130.1, Ex. 279). The representation that Respondents in fact produced the documents provided to Sobel in compliance with the discovery order (A130.1, Ex. 23, p. 3) was false, and known to be false in an effort to deceive the tribunal.

In opposition to the motion for sanctions, counsel falsely represented:

> The Panel ordered Respondents to produce documents that were provided to Sobel.  **That is what Respondents did**.

(A130.1, Ex. 23, p. 3, emphasis supplied).

Except they did not.

> The Arbitral Panel then ordered the following production:

- Seaport's tax returns for 2009 through 2012;

- Seaport's internal accounting records in Quickbooks files, but they need not be produced "in Quickbooks native file," and

- All documents delivered to Sobel.

(A130.1, Ex. 25).

The request for sanctions was denied.  And the case proceeded to trial.

### 4.     The Truth Comes Out On the Last Day of Trial.

Petitioner was then forced to try his case in September 2014 over nine days (A130.1, Exs. 27-35) without the benefit of the documents in Sobel's possession. These documents were being wrongfully withheld from him at the insistence and direction of Respondents and their counsel in violation of existing Orders.  During the examination of Seaport's accountant Allen Povol – on the last day of evidence – it was revealed and confirmed what Petitioner suspected all along regarding what he gave Sobel in June 2012:

> **THEY TOOK THE QUICKBOOKS FILES. WE GAVE THEM A COPY OF THE QUICKBOOKS FILES SO THEY DID WHATEVER THEY DID WITH IT.  I DON'T KNOW.**

(A130.1, Ex. 34, p. 1949).

Seaport and their counsel <u>never</u> produced any Quickbooks files before, during, or after the trial. They failed to do so in contravention of not only FINRA Rule 13505 ("the parties <u>must</u> cooperate"), but also two prior Orders of the Arbitral Panel.[5]

During the pendency of the district court case, additional clarity on the issue came to bear. The day before a pre-motion conference seeking limited discovery, counsel for Sobel confirmed:

> **The issue is Meyer. If Meyer had consented a year ago when you initially attempted to obtain these records we'd have no issues……….**
(A312).

Former counsel for Respondent Meyer agreed. He added that his client – Meyer's former lawyer for the Sobel audit – was instructed to no longer speak with him. (A315). That instruction coming from Seaport's counsel.

The e-mail from Sobel's counsel was forwarded to counsel for the Respondents. He was asked to confirm if they were in fact the ones instructing McMillan to not turn over Petitioner's file. His response: "We will respond in writing in due course." (A319). They never did.

---

[5] Respondents and their counsel also failed to produce two critical e-mails that impeached their contention that Petitioner was never considered a "partner" of Seaport. (A42-45). This despite producing over 80,000 pages of documents. Counsel admitted he misrepresented the document in question was previously produced. (A130.1, Ex. 31, p. 962). Yet no consequences were imposed.

Petitioner diligently sought the Sobel file not just during discovery in the

FINRA Arbitration, but also during trial, through separate litigation,[6] and even

after trial. The unassailable truth is that Respondents and their counsel were

singularly responsible for the failure to deliver the Sobel documentation in

violation of FINRA Rule 13505 – the parties must cooperate to the fullest extent

practicable in the exchange of documents and information to expedite the

arbitration.

Given the intentional deception and willful violations of multiple discovery

Orders, Petitioner made a motion before the Arbitral Panel seeking the following

relief: (1) issue preclusion regarding the validity of his equity interest; (2)

dismissal of Seaport's counterclaim; and (3) alternatively postpone the conclusion

of the proceedings until receipt of whatever Sobel had in its possession.  (A130.1,

Ex. 35, p. 2073-2081). The Arbitral Panel took a recess. It then announced that

Seaport was ordered to deliver the original Quickbooks native file.  (*Id.*, p. 2091-

2092). Petitioner asked if the Arbitral Panel would direct Meyer to give his consent

to Sobel – as permitted by FINRA Rule 13513 – so that he could receive what

Sobel received in June 2012. (*Id.*, p. 2092). Meyer and Meagher, quite likely on the

---

[6] In January 2014, Petitioner sued Sobel and McMillan in Southern District (Case
No. 1:14-cv-646-RMB).  That case was dismissed with prejudice as to the federal
claim on February 11, 2015.  The state claims for breach of contract and breach of
fiduciary duty were not.  Petitioner refiled those claims on February 17, 2015, in a
case now pending in the Supreme Court of New York, Index No. 650467/2015.

advice of counsel, "controlled" the non-production of documents by Sobel. In

response, counsel suggested that "we agree to a subpoena to Sobel, get them to

appear at the next hearing." (*Id.*) Petitioner had no objection to issuing a subpoena

to Sobel, but continued to request the direction that Meyer to give his consent to

deliver the Sobel documentation. The motion was deemed submitted without a

ruling. (*Id.*, p. 2125-2184).

### 5. Petitioner is Awarded Almost $2.3MM and the Counterclaim is Denied.

The Arbitral Panel generally awarded Petitioner compensatory damages of

$2,289,774.00 without specification of which claims that covered, and "specific

performance" regarding a trade that has yet to settle. (A130.1, Ex. 1). The

equitable claims for a declaratory judgment, an accounting, and a constructive trust

were denied along with the motion for sanctions. The counterclaim for

$821,707.26 was denied in its entirety.

### C. Petitioner Files in Southern District to Vacate in Part and Modify in Part.

Petitioner now seeks to vacate that portion of the Award related to his equity

interest in Seaport on two grounds. First, under § 10(a)(3) of the FAA, insofar as

the arbitrators refused to insure that relevant documentary evidence in the

possession, custody, and control of the Respondents and their counsel were fully

and timely made available to him. *Home Indemnity Co. v. Affiliated Food Distrib.*,

1997 U.S. Dist. LEXIS 19741 (December 12, 1997 S.D.N.Y.). When a party's basic right to present and test evidence on issues has not been accorded, vacatur is warranted pursuant to Section 10(a)(3). *Cofinco, Inc. v. Barkie & Bros.*, 395 F. Supp. 613, 615 (S.D.N.Y. 1975).

Second, the arbitrators acted in "manifest disregard" of the law. *Jock v. Sterling Jewelers*, 646 F.3d 113, 121-22 (2d Cir. 2011). In "order to vacate an arbitration award for manifest disregard of the law, a court must conclude that the arbitrator knew of the relevant legal principle, appreciated that [that] principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Nykcool A.B. v. Pac. Fruit, Inc*., 507 Fed. Appx. 83, 86 (2d Cir. N.Y. 2013) (Summary Order). Namely, FINRA Rule 13505 that obligates the parties to "cooperate to the fullest extent practicable in the exchange of documents and information to expedite the arbitration." FINRA rules further obligate parties to act in good faith when responding to discovery requests. "Good faith" means that a party must use its best efforts to produce all documents required or agreed to be produced. FINRA Rule 13507(b).

Petitioner also seeks to modify that portion of the Award related to the "specific performance" award for a specific trade under § 11(a). (A68-69). There was an evident and material miscalculation of the "50% payout to Claimant and co-covering salesperson split equally." (*Id*.) No evidence existed in the trial record

that there was any "co-covering salesperson." Petitioner should be awarded the entirety of the "50% payout" for this transaction.

### 1. The Entire FINRA Arbitration Record Is Ordered Under Seal.

Petitioner submitted the underlying arbitration record under seal when initiating the district court case. (A130-159). Aware of the standard for sealing per this Court's decision in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006), he proposed an order to show cause to temporarily restrict access to those documents until Respondents were given an opportunity to be heard. (A97-98). Judge Hellerstein signed the order and directed a briefing schedule on the issue. (*Id.*)

The underlying record consisted of "judicial documents" necessary to the court's adjudication. While the Arbitral Panel did order the parties to execute a Confidentiality Stipulation over Petitioner's objection (A130.1, Exs. 12-17), "the mere existence of a confidentiality agreement covering judicial documents is insufficient to overcome the *First Amendment* presumption of access." *Aioi Nissay Dowa Ins. Co. Ltd. v. ProSight Speciality Management Co. Inc.*, 2012 U.S. Dist. LEXIS 118233, *6 (S.D.N.Y. Aug 21, 2012). Since the district court is not a party to the stipulation, it is not bound by it. *Istithmar World PJSC c. Amato*, 2013U.S. Distr. LEXIS 2205, *6 (S.D.N.Y. Jan. 7, 2013). "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such

27

action." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). The presumption of access…can be overcome only by specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." *Anonymous v. Medco Health Solutions, Inc.*, 2014 U.S. App. LEXIS 23645, *quoting Newsday LLC v. County of Nassau*, 730 F.3d 156, 164 (2d Cir. 2013).

Within ten days of the sealing directive, Judge Furman entered an order that he would rule on the sealing of the record when he decided the underlying dispute. (A104-105).

## 2. The District Court Denies Petitioner Limited Discovery.

Petitioner also sought limited discovery. He served document subpoenas on Sobel and Povol & Feldman. (A106-129). Those subpoenas sought the information Seaport was previously ordered to produce. (*Id.*) The information never delivered to Petitioner.

Respondents opposed the discovery. (A192-199). The district court held a conference on the issue and denied the discovery without prejudice. (A238). Judge Furman directed Petitioner could renew his request for discovery through a Rule 56(d) declaration along with his initial brief. (*Id.*) Petitioner did just that. (A296-321).

### 3. Respondents Fail to Provide any Substantive Opposition to the Petition.

Respondents presented three reasons to deny the petition to vacate and modify. First, that Petitioner stated at the end of the hearing to having a "full and fair opportunity to be heard." Second, he never asked the Arbitral Panel to issue a subpoena to Sobel. Third, the Arbitral Panel "had many colorable justifications" for denying his claims regarding his capital account and equity interest. None of these has any merit.

### (a) A "Full and Fair Opportunity to Be Heard" Does Not Waive the Right to Appeal.

Respondents argued that because Petitioner acknowledged that he had a "full and fair opportunity to be heard" at the conclusion of the trial and after his final application for sanctions, that he cannot now "relitigate the arbitration." (A345-346). Further, that this is conclusive proof that the "hearing was fair." (A355).

But having an "opportunity to be heard" on an issue or issues *ex ante* is not the equivalent of an admission that the end result *ex post* was without error. Arbitration awards may be vacated where one of the grounds listed in 9 U.S.C. § 10(a) is affirmatively shown to exist. *Wall Street Assocs., L.P. v. Becker Paribas Inc.*, 27 F.3d 845, 848 (2d Cir. 1994). Section 10(a)(3) is violated when arbitrators fail to insure that relevant documentary evidence in the hands of one party is fully and timely made available to the other, and prejudice is shown. *Home Indemnity,*

1997 U.S. Dist. LEXIS 19741, *9-10. When a party's basic right to present and test evidence on issues has not been accorded, vacatur is warranted pursuant to Section 10(a)(3). *Cofinco*, 395 F. Supp., at 615. The Panel failed to enforce its own orders of production, Petitioner was prejudiced, and vacatur is warranted on the capital account and equity interest claims.

> **(b)    A Subpoena to Sobel Would Have Been a Futile Act – It Was Not Necessary Because Respondents Were Ordered to Produce and They Controlled Sobel's <u>Nonproduction.</u>**

Respondents argued the only way Petitioner could have, and should have received the documentation from Sobel was through a FINRA subpoena. (A345). This requires the doing of a futile act. It is settled law in this Circuit arbitrators are not authorized to compel pre-hearing document discovery from entities not party to the arbitration proceedings. *Life Receivables Trust v. Syndicate 102*, 549 F.3d 210, 216-217 (2d Cir. 2008). Plus the Arbitral Panel denied each and every request for a non-party subpoena. Equity does not require the doing of a futile act as a condition to the granting of equitable relief. *See Goetz v. Crosson*, 728 F. Supp. 995, 999 (S.D.N.Y. 1990).

This argument also ignores all the efforts made by Petitioner to receive the documentation from his own hired accountant. In September 2013, Petitioner requested Sobel deliver a complete copy of their file. (A373-374). Respondents objected to any disclosure by Sobel to Petitioner. (A377). Sobel then refused

against the wishes of its former client – and in favor of the entity it was supposedly

investigating. (A130.1, Ex. 22, Exhibit 7 thereto).

Respondents were ordered by the Arbitral Panel on multiple occasions to

produce the documents provided to Sobel in June 2012. (A130.1, Ex. 21). Those

documents were never produced. Respondents and their counsel were exclusively

in "control" of Sobel's non-production.

During the final application for sanctions, while Petitioner did not object to a

subpoena being issued to Sobel (which was suggested by Respondents' counsel),

Petitioner also requested the Panel direct Michael Meyer to consent to Sobel

turning over its files in order to comply with the existing discovery order. (A130.1,

Ex. 35, p. 2092). Rule 13513(b) gives the Arbitral Panel the authority to direct an

Associated Person (which Meyer is one) to produce documents in his "possession

or control."  In response, counsel for Respondents again lied to the Panel:

> **MR. BLUM:        We cannot force Sobel to do anything.**
(A130.1, Ex. 35, p. 2092).

But it turns out that the reason for Sobel not turning over its files was because of

Respondents:

> **The issue is Meyer.  If Meyer had consented a year ago when you**
> **initially   attempted to obtain these records we'd have no issues….**
(A312).

Seaport was ordered Seaport to deliver the documents it gave to Sobel in June 2012. (A130.1, Ex. 35, p. 2091-2092). That never happened. And there were no consequences to the non-production.

> **(c)** **Whether the Arbitral Panel Had "Colorable Justifications" for Its Decision Misses the Point. Petitioner was Deprived of Relevant Documentary Evidence in the Control of Respondents.**

Respondents argued the Arbitration Panel was justified in its ultimate decision. (A358-359). But that is not the Petitioner's complaint. Vacatur is warranted because he was deprived of information and documentation that was solely in Respondents' possession, custody and control. He was therefore denied a fair trial.

This argument misses the entire point of the relief sought herein under Section 10(a)(3) – Petitioner was deprived of relevant documentary evidence in the hands of Respondents that was not fully and timely made available to him. It is irrelevant whether the Arbitral Panel had "many colorable justifications" to rule as it did based on the then-presented evidence. Respondents were ordered to produce documents it provided to Sobel in June 2012. Those documents have now been identified. They are readily available. And it was conclusively shown that the only reason Petitioner was deprived of this information prior to trial was because of the direction of Michael Meyer, Michael Meagher, and their counsel directing Sobel to not provide the information. (A130.1, Ex. 40, p. 1528-1529).

This is not a situation where the requested information was denied. The Sobel documents were ordered to be produced. Petitioner is not looking to relitigate prior discovery orders. He wants those prior orders enforced. And then have the opportunity to use those documents at a fair trial.

This case is not about speculating on the "justification" of the Panel's decision. It is about whether Petitioner tried his case being deprived of relevant documentary evidence in the possession, custody, and control of Respondents. The Sobel documents are relevant because the Arbitral Panel ordered them produced. Petitioner never received them because Respondents exclusively controlled their nonproduction.

### D. Citing *Greenberg* as Controlling Law, the District Court Rules the Case Lacks Subject Matter Jurisdiction and Orders the Entire Underlying Record Remain Under Seal.

Four months after submission the district court issued an Order dismissing this case for a lack of subject matter jurisdiction. (SPA1-10). Judge Furman also ordered the entirety of the sealed documents to remain under seal because he "did not consider the documents at issue" in making his decision. (SPA9-10).

## SUMMARY OF ARGUMENT

The district court held it was bound by this Circuit's decision in *Greenberg* notwithstanding the Supreme Court decision *Vaden*. *Greenberg* held a court may not "look through" to the underlying claims in the petition to determine subject

matter jurisdiction. The district court also held that a violation of FINRA rules did not involve substantial issues of federal law. The dismissal is error for three reasons. First, the Exchange Act is an independent basis for jurisdiction – district courts have exclusive jurisdiction over 10b-5 claims. Second, *Vaden* mandates a court "look through" to the underlying complaint to determine subject matter jurisdiction. Third, FIRNA Rules violations do indeed implicate federal law.

Section 78aa of the Exchange Act gives district courts exclusive jurisdiction over securities claims. The underlying case involved a count for securities fraud for violation of Section 10(b) of the Exchange Act and Rule 10b-5. (A130.1, Ex. 5, p. 22). Just as district courts exercise subject matter jurisdiction over labor arbitration awards under 29 U.S.C. § 185, so too for arbitrations concerning securities claims under 15 U.S.C. § 78aa.

*Vaden* ruled that the question is whether a federal court would have jurisdiction over "the substantive controversy between the parties." A 10b-5 claim is certainly a "federal question." And this case largely involves challenging the award with respect to that count.[7] Petitioner's 10b-5 claim satisfies the inquiry. In two prior Summary Orders since *Vaden*, this Court determined that a district court is to "look through" the underlying pleadings to determine subject matter

---

[7] When arguing against the arbitral panel issuing an Explained Decision, counsel for Respondents stated he did not want the decision "in the Southern District attached to a Complaint." (A130.1, Ex. 28, p. 480).

jurisdiction regarding a petition to vacate under Section 10(a) of the FAA. *See Bittner* and *Guisti*. While the district court acknowledged these two decisions, because those were not precedential opinions, it found that it was therefore bound by *Greenberg*. (SPA6). This despite acknowledging the sole basis for the holding in *Greenberg* was this Court's decision in *Westmoreland* – which was nullified by *Vaden*. *Id*.

FINRA rules – such as Rule 13505 ("the parties must cooperate") – are substantive federal law. Self-Regulatory Organizations (SROs) such as FINRA and NASD were established under § 15A of the Exchange Act (15 U.S.C.S. § 78o-3), "and [have] the authority to exercise comprehensive oversight over all securities firms that do business with the public." *UBS Fin. Servs. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 644 (2d Cir. N.Y. 2011). FINRA creates and enforces rules that govern the securities industry and those rules must be approved by the SEC. *See* 15 U.S.C. § 78s(b)(1). The SEC may abrogate, add to, and delete from all FINRA rules it deems necessary. 15 U.S.C. § 78s(c). State courts have no jurisdiction over lawsuits concerning violations of the Exchange Act Rules. *Fin. Indus. Regulatory Auth., Inc. v. Fiero*, 10 N.Y.3d 12, 17 (2008). FINRA Rules are Exchange Act Rules. Exchange Act Rules are substantive federal law. So are FINRA Rules.

Anything less than a reversal in this case would also be detrimental to future litigants, whom would continue to operate with uncertainty regarding this issue.

Under *Greenberg*, channeling *Westmoreland*, a district court only has subject

matter jurisdiction in a Section 10 case if the parties are diverse, is a case in

admiralty, or it "involves a substantial federal question" – that the underlying

arbitration involved federal claims is not enough. Such a standard lacks clarity for

persons aggrieved by an arbitration decision. It gives district judges broad

discretion to pick and choose which cases to determine and which to discard. It

may even result in the parties never reaching any review, given the limited period

of time to invoke the courts to review arbitration decisions under both federal and

state law. A bright-line rule may now be pronounced to clarify such a murky issue

in this Circuit.

## STANDARD OF REVIEW

This Court reviews a district court's dismissal for lack of subject matter

jurisdiction *de novo*. *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).

## ARGUMENT

## POINT I

## THE DISTRICT COURT HAS SUBJECT MATTER JURISDICTION

### A.     Petitioner's 10b-5 Claim Is an Independent Basis for Jurisdiction.

It is well settled that the FAA does not confer federal question jurisdiction

under 28 U.S.C. § 1331 – there must be an independent basis of jurisdiction.

*Harry Hoffman Printing, Inc. v. Graphic Communications, Int'l Union, Local 261*,

912 F.2d 608, 711 (2d Cir. 1990). Section 10(a) of the FAA expressly provides that

"the United States court in and for the district wherein the award was made" can

vacate an award under four circumstances. This case is brought under the third:

> where the arbitrators were guilty of misconduct in refusing to postpone the
> hearing, upon sufficient cause shown, or in refusing to hear evidence
> pertinent and material to the controversy; or of any other misbehavior by
> which the rights of any party have been prejudiced; or

9 U.S.C. § 10(a)(3).

Petitioner's 10b-5 claim gives that independent basis.

### 1.      District Courts Have Exclusive Jurisdiction over 10b-5 Claims.

District courts have exclusive jurisdiction over violations of the Securities

Exchange Act of 1934, the rules and regulations thereunder, and of all suits in

equity and actions at law brought to enforce any duty or liability created by the

Exchange Act. 15 U.S.C. § 78aa; *NASDAQ OMX Group, Inc. v. UBS Sec., LLC*,

770 F.3d 1010, 1030 (2d Cir. 2014). Petitioner's 10b-5 securities fraud claim is

subject to the exclusive jurisdiction of the federal courts. *Will v. Calvert Fire Ins.

Co.*, 437 U.S. 655, 659 (1978). State courts do not have the power to decide cases

covered by Section 78aa. *See Fiero*, 10 N.Y.3d, at 17 (2008). "When federal law

creates a private right of action and furnishes the substantive rules of decision, the

claim arises under federal law, and district courts possess federal-question

jurisdiction under Section 1331." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740,

749 (2012). The district court has subject matter jurisdiction because the

underlying arbitration includes a federal securities law claim. *Goldman, Sachs & Co. v. Athena Venture Partners*, 2015 U.S. App. LEXIS 17122, at *7, n. 5 (3d Cir. Sept. 29, 2015).

  **2.**  **Statutory Construction Mandated This 10b-5 Claim Be Arbitrated – It Was Not Because of a Private Agreement Among the Parties.**

  FINRA is the only registered national securities self-regulatory organization established under Section 15A of the Exchange Act since 2007. *UBS Fin. Servs. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011), citing 15 U.S.C. § 78o-3; *Karsner v. Lothian*, 532 F.3d 876, 879 n.1, (D.C. Cir. 2008); SEC Release No. 34-56145, 2007 SEC LEXIS 1640 (July 26, 2007). It has the authority to exercise comprehensive oversight over "all securities firms that do business with the public." *Id.*, citing *Sacks v. SEC*, 648 F.3d 945 (9th Cir. Aug. 8, 2011) (quoting 72 Fed. Reg. 42170 (Aug. 1, 2007)). All securities firms and employees thereof must register with FINRA, thus becoming members of FINRA. *Christensen,* 73 F. Supp. 3d, at 410-411. "Membership in FINRA constitutes an agreement to adhere to FINRA's rules and regulations, including its Code and relevant arbitration provisions contained therein." *Id.* at * 411. The SEC must approve of all FINRA's rules. 15 U.S.C. § 78s(b)(1). The SEC may abrogate, add to, and delete from all FINRA rules it deems necessary. 15 U.S.C. § 78s(c).

Along with other functions FINRA sponsors an arbitration forum. *Cohen*, 2015 U.S. App. LEXIS, at *4 (2d Cir. June 30, 2015), *citing* Securities and Exchange Commission Release No. 34-56145, 72 Fed. Reg. 42169, 42288-89 (Aug. 1, 2007). Use of that forum to adjudicate disputes between FINRA members and "associated persons" is governed by the Code of Arbitration Procedure for Industry Disputes. *Id.*

An arbitration panel derives its jurisdiction from an agreement of the parties or from an order of a court compelling arbitration. *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 704 (2d Cir. 1985). Firms that deal in securities must comply with FINRA rules because federal law requires them to do so. *Aslin v. FINRA*, 704 F.3d 475, 476 (7th Cir. 2013). Petitioner was a licensed broker – thus an "Associated Person" under FINRA's rules. He was required to arbitrate this dispute against "member" Seaport and the other Respondents as "associated persons." FINRA Rule 13200. Federal law required Petitioner to arbitrate his federal securities fraud claim against the Respondents by arbitration within FINRA. Any petition to vacate, modify, or confirm such an arbitration decision must be exclusively determined by a district court. Subject matter jurisdiction exists in this case.

### 3. Jurisdiction Over Arbitrations Involving Securities Claims Under § 78aa is no Different than Jurisdiction over Labor Arbitration Awards under § 185.

It is now well-settled that district courts have subject matter jurisdiction over petitions to vacate labor arbitration awards under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (the "LMRA"). *Kallen v. District 1199, Nat'l Union of Hosp. and Health Care Employees*, 574 F.2d 723, 725 (2d Cir. 1978); *Local 802, Associated Musicians of Greater New York v. The parker Meridian Hotel*, 145 F.3d 85, 88 (2d Cir. 1998) (Section 301 of the LMRA provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards. *See Harry Hoffman*, 912 F.2d, at 612 (2d Cir. 1990)). Much like Section 78aa for securities claim under the Exchange Act, the LMRA gives a district court jurisdiction over violations of labor contracts:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a)

Neither the LMRA nor Section 78aa contains the word "arbitration." But for the LMRA it is beyond cavil that district courts have subject matter jurisdiction to compel, confirm, or vacate arbitration awards covered by the statue. *General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co, Inc.*, 372

U.S. 517, 519 (1963) (per curiam) ("It is not enough that the word "arbitration" does not appear in the collective bargaining agreement, for we have held that the policy of the Labor Act 'can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play.'" *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 566 (1960); *cf. Retail Clerks v. Lion Dry Goods, Inc.*, 369 U.S.17 (1962)). This being the case even though the jurisdictional statue, § 185(a), is non-exclusive.

The LMRA provides an "independent basis" of jurisdiction for someone to vacate or confirm under the FAA. So too does Section 78aa of the Exchange Act. This section unequivocally "confers jurisdiction upon the federal courts for suits brought to enforce the Act or rules and regulations promulgated thereunder." *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 370 (1996). The district court has subject matter jurisdiction of this case.

### B. The District Court Has Subject Matter Jurisdiction Because Petitioner's 10b-5 Claim is a Federal Claim.

The district court dismissed this case for lack of subject matter jurisdiction. It held that notwithstanding the Supreme Court decision in *Vaden*, it was bound by this Circuit's decision *Greenberg* – which found that for a Section 10 petition to vacate a court may not "look through" to the claims in the underlying arbitration to determine subject matter jurisdiction. (SPA8-9). The district court held it "cannot say that, in light of *Vaden*, "the Second Circuit or the Supreme Court is all but

certain to overrule" *Greenberg*. (SPA7). It then cited a number of non-precedential decisions from other districts purporting to support its determination that the reasoning in *Vaden* "rested on language specific to § 4 that does not appear in … [§] 10." (SPA8). They all lack merit.

Dismissal based on *Greenberg* is clear error.

### 1. The Supreme Court Decision in *Vaden* Directs Courts to "Look Through" to the Underlying Complaint.

In a 5-4 decision, the Supreme Court held that a district court may "look through" a Section 4 petition to compel arbitration to determine if "save for the arbitration agreement," the underlying dispute presented a federal question. *Vaden*, 556 U.S., at 53. If it did based on the "well-pleaded complaint" rule, subject matter jurisdiction existed. *Id*., at 62. For the dissent, if the Section 4 petitioner sought to compel the arbitration of a federal claim the district court would have subject matter jurisdiction. *Id*., at 72-80. All nine justices agreed that subject matter jurisdiction is determined by "looking through" to the underlying complaint. *Id.*, at 72.

*Vaden* specifically abrogated this Circuit's decision in *Westmoreland*. *Id*., at 57. *Westmoreland* involved a petition to compel arbitration and held that a court may not "look through" the petition and focus on the underlying dispute to determine subject matter jurisdiction. *Westmoreland*, 100 F.3d, at 268. It held that a Section 4 petition to compel "must be brought in state court unless some other

basis for federal jurisdiction exists, such as diversity of citizenship or assertion of a claim in admiralty." *Id*.

## 2. *Greenberg* Was Nullified By *Vaden*.

*Greenberg* involved a Section 10 petition to vacate an existing award and invoked the reasoning of *Westmoreland* – a case involving a Section 4 petition to compel. *Greenberg* found "[t]he holding in *Westmoreland* logically extends to motions to vacate an arbitration award under § 10 of FAA." If that is the case, and *Greenberg* does remain the standard in the Second Circuit, the abrogation of *Westmoreland* by *Vaden* mandates reversal in this case. If the reasoning in *Westmoreland* still "logically extends" to § 10 of the FAA, and the Supreme Court ruled *Westmoreland* was incorrect, then it necessarily follows that *Vaden* must now be applied to Section 10 petitions to vacate.

The Supreme Court made clear that a district court is to "look through" the underlying pleadings to determine subject matter jurisdiction. Petitioner's 10b-5 securities fraud claim satisfies that inquiry. He is entitled to have his petition determined on the merits by the district court. In two prior Summary Orders since the Supreme Court's watershed decision in *Vaden* (involving a Section 4 petition to compel), this Court determined that a district court is to "look through" the underlying pleadings to determine subject matter jurisdiction regarding a petition to vacate under Section 10(a) of the FAA. *See Bittner* and *Guisti*, *supra*. The

43

district court acknowledged these two decisions. (SPA6, f.n.4). But it held that

because those were not precedential opinions, it was therefore still bound by

*Greenberg*.  (*Id*.)

### 3.    District Court Decisions That Fail to Apply *Vaden* to § 10 Petitions are Flawed and Not Applicable.

#### (a)    The Pre-*Vaden* Cases are Irrelevant.

Apart from the misplaced reliance on *Greenberg*, the district court offered

little in the way of supporting its conclusion it lacked subject matter jurisdiction. It

cited two cases pre-*Vaden* that held a district court could not "look through" a

petition to vacate under Section 10: *Minor v. Prudential Sec., Inc.*, 94 F.3d 1103,

(7th Cir. 1996); and *Kasap v Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243

(D.C. Cir. 1999). (SPA6-8). Neither have any relevance after *Vaden*.

In *Minor,* the Seventh Circuit limited Section 10 jurisdiction to only

diversity cases or when the petition involves a federal question on its face. *Minor*,

94 F.3d, at 1107. *Minor* cited "a strong body of case law has developed" that the

nature of the underlying dispute is irrelevant for purposes of subject matter

jurisdiction. *Id.*, at 1006. That "strong body" included *Prudential-Bach Securities,*

*Inc. v. Fitch*, 966 F.2d 981 (5th Cir. 1992) and *Drexel Burnham Lambert, Inc. v.*

*Valenzuela Bock*, 100 F.3d 263 (2d Cir. 1996). *Id*. Two cases *Vaden* specifically

rejected.  *Vaden*, 556 U.S., at 57. Notably, *Westmoreland* cited *Minor* to

substantiate its opinion. 100 F.3d, at 267. *Vaden* abrogated *Westmoreland* as well. 556 U.S., at 57.

*Kasap* determined that "the clear weight of authority rejects" the proposition that subject matter jurisdiction for a Section 4 petition is determined by whether a federal court would have jurisdiction over the underlying dispute. *Kasap*, 166 F.3d, at 1246-1247. It relied on *Westmoreland*, *Smith Barney, Inc. v. Sarver*, 108 F.3d 92 (6th Cir. 1997); *Prudential-Bach*, *Minor*, and *Drexel Burnham*. *Kasap*, 166 F.3d, at 1246-47. All of which were rescinded as authority by *Vaden*. In finding the same rationale applied to Section 10 petitions to vacate, *Kasap* agreed with the Seventh Circuit's conclusion in *Minor*. But this case has never been cited by the D.C. Circuit to dismiss a Section 10 petition to vacate for a lack of subject matter jurisdiction since *Vaden*.

### (b) The Post-*Vaden* Cases are Untenable.

The district then cited to "several courts" having reached the same conclusion in the wake of *Vaden* – that *Vaden* "rested on language specific to § 4 that does not appear in … [§]10." (SPA8). None of these carry any weight. All of these district court decisions contain some or all of the following characteristics: (1) the facts are inapposite to this case; (2) they rely on *Greenberg*; or (3) their applicable Court of Appeals rejected their reasoning. None of them are binding on this Court.

First, the district court cited *Royal Bank Am. v. Kirkpatrick*, 2011 WL 4528349, at *3, n.5 (E.D. Pa. Sept. 30, 2011). (SPA8). This case only involved a state law breach of employment contact. *Id.*, at *2. In dicta, this court noted the holding in *Vaden* "rested on language specific to § 4 that does not appear in §§ 9 and 10." *Id.*, at *3, n.5. It then references *Fox v. Faust*, 239 F. App'x. 715, 717, n.2 (3d Cir. 2007) (Summary Order) in support of the notion that the "look-through" doctrine does not apply to Section 10 petitions. *Id.* Turns out *Fox* relied exclusively on *Westmoreland* in coming to its decision. It cites *Greenberg* twice in support. *Fox* is also an unpublished decision. And most importantly, the Third Circuit recently rejected this reasoning in a precedential opinion – *Goldman, Sachs & Co*. That case specifically held the district court had subject matter jurisdiction over the case under § 78aa(a) "because the underlying arbitration included federal securities law claims." *Goldman, Sachs & Co.*, 2015 U.S. App. LEXIS, at *7, n. 5. *Royal Bank* is now of no consequence in the Third Circuit.  Nor should it be here.

Second, the district court cited *Goldman v. Citigroup Global Markets Inc.*, 2015 WL 2377962, at * 3 & n.7 (applying *Greenberg*) (E.D. Pa. May 19, 2015). (SPA8).   Once again a Third Circuit case that is now subject to the recent decision in *Goldman, Sachs & Co*.  This case is currently on appeal.  (Case No. 15-2354). And it exclusively relied on *Greenberg* in concluding it was not permitted to "look

through" to the underlying arbitration to find a federal issue for subject matter jurisdiction. *Goldman* is not relevant.

Third, it cited *Crews v. S & S Serv. Ctr. Inc.*, 848 F. Supp. 2d 595, 599-600 (E.D. Va. 2012) (declining to "apply the 'look through' test to § 10, because the 'unique jurisdictional language' of § 4 that gave rise to the test is absent in §10.") (SPA8). This Fourth Circuit case only involved state-law claims for breach of warranty and for a violation of the Virginia Consumer Protection Act. *Id.*, at 596. *Crews* cites *Med-Tel Int'l Corp. v. Loulakis*, 403 F. Supp. 2d 496, 499 (E.D. Va. 2005) when declining to use the "look through" test. *Crews*, 848 F. Supp., at 599. *Med-Tel* relied on both *Greenberg* and *Westmoreland* in coming to its conclusion. *Med-Tel*, 403 F. Supp. 2d, at 500.

Fourth, the district court cited *Sonic Auto, Inc. v. Price*, 2011 WL 3564884, at *8 (W.D.N.C. Aug 12, 2001) (applying *Greenberg*). (SPA 8). Another Fourth Circuit case. *Sonic Auto* followed *Med-Tel*. And *Greenberg*.

Last, it cited *Trustees of Local Union No. 580 of Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers Employee Ben. Funds v. Gen. Fence Corp.*, 2014 WL 1800428, at *11 (E.D.N.Y. May 5, 2014) ("[T]he look-though doctrine is, at this time, limited to petitions to compel arbitration under FAA § 4 and *Greenberg's* reasoning is still applicable outside that context."). (SPA8). Immediately before the quoted statement, this district court stated it

agreed with *Royal Bank* – the Pennsylvania case first cited as authority whose

reasoning was rejected a month ago by the Third Circuit Court of Appeals in

*Goldman, Sachs & Co.*

| District Court's Cited Authority | Why Not Relevant |
|---|---|
| *Royal Bank Am. v. Kirkpatrick* (E.D. Pa.)<br><br>- Cites *Fox v. Faust* in support | • State law breach of contract claim<br><br>• *Fox* relied on *Westmoreland* and *Greenberg*<br><br>• Third Circuit just issued precedential opinion that § 78aa gives a district court subject matter jurisdiction. *Goldman, Sachs, & Co.* |
| *Goldman v. Citigroup Global* (E.D. Pa.)<br><br>- Relied on *Westmoreland* and *Greenberg* | • Currently on appeal in 3d Circuit<br><br>• Overridden by *Goldman, Sachs, & Co.* |
| *Crews v. S & S Serv. Ctr* (E.D. Va.)<br><br>- Cited *Med-Tel Int'l* in support | • State law claims only<br><br>• *Med-Tel Int'l* relied on *Westmoreland* and *Greenberg* |
| *Sonic Auto, Inc. v. Price* (W.D.N.C.)<br><br>- Cited *Greenberg* and *Med-Tel Int'l* in support | • *Med-Tel Int'l* relied on *Westmoreland* and *Greenberg* |
| *Trustees of Local Union No. 580* (E.D.N.Y.)<br><br>- "Agreed" with *Royal Bank* | • *Royal Bank* reasoning just rejected by Third Circuit in *Goldman, Sachs, & Co.* |

None of these cases are binding on this Court. They all are influenced by

*Greenberg*. Which relied exclusively on *Westmoreland*. Which was abrogated by

*Vaden*. They are all entirely distinguishable and of no legal moment to this case.

After *Vaden*, a district court may "look through" the underlying arbitration

complaint to determine whether it has subject matter jurisdiction. For Section 4

cases. For Section 10 cases.

### C.  The District Court Has Subject Matter Jurisdiction Because the Case Involves a Manifest Disregard of Federal Law

The district court also had subject matter jurisdiction because this case

involved a manifest disregard of federal law. Under the "manifest disregard"

ground for vacatur, arbitrators must appreciate the existence of a clearly governing

legal principle but decide to ignore or pay no attention to it." *Century Indem. Co. v.

AXA Belguim*, 2012 U.S. Dist. LEXIS 136472 (S.D.N.Y. Sept. 24, 2012), at *34-

35. Petitioner asserts the Arbitral Panel knew of the FINRA Rules and the law

since they originally granted Petitioner's motion to compel production, but then

denied all requested relief in the award. Rather than deal with the profound

discovery abuse and admittedly non-compliant document production – in violation

of FINRA's Rules and in clear bad faith – the Arbitral Panel chose to ignore it.

### 1.  FINRA Rules are Federal Law.

District courts have exclusive jurisdiction over violations of the Exchange

Act, the rules and regulations thereunder, and of all suits in equity and actions at

law brought to enforce any duty or liability created by the Exchange Act. 15 U.S.C. § 78aa. FINRA creates and enforces rules that govern the securities industry and those rules must be approved by the SEC. *See* 15 U.S.C. § 78s(b)(1). All securities firms and employees thereof must register with FINRA, thus becoming members of FINRA. *Christensen*, 73 F. Supp. 3d, at 410-411. "Membership in FINRA constitutes an agreement to adhere to FINRA's rules and regulations, including its Code and relevant arbitration provisions contained therein." *Id*. at * 411. The SEC may abrogate, add to, and delete from all FINRA rules it deems necessary.  15 U.S.C. § 78s(c).

NASDAQ is a self-regulatory organization registered as a national securities exchange under the Exchange Act. 15 U.S.C. § 78f. It is a self-regulatory organization just like FINRA. Whether a registered securities exchange such as NASDAQ has violated its federally prescribed duty to operate a fair and orderly exchange necessarily raises a disputed question of federal law. *NASDAQ OMX Group, Inc.*, 770 F.3d, at 1021. Just like whether FINRA's arbitrators fail to adhere to its arbitration rules and enforce its own orders to ensure due process for a fair trial raises a disputed question of federal law.

### 2. District Court Decisions Concluding Otherwise Are Also Flawed and Were Abrogated By *NASDAQ OMX Group.*

The district court "easily rejected" Petitioner's contention that a manifest disregard of FINRA Rules gives rise to federal-question jurisdiction.  It held that

FINRA or NASD Rules "do not constitute a valid manifest disregard of federal law." (SPA4). The district court cited six decisions in support. This is error once again. None of those cases are binding on this Court. None of them have any merit.

First, the district court cited *Goldman*. (SPA4). The Pennsylvania case currently on appeal. The case eviscerated by *Goldman, Sachs & Co.* – the recently published precedential Third Circuit opinion. *Goldman* held that the FINRA Rules at stake therein (margin call) "are not substantial enough to confer subject matter jurisdiction." *Goldman*, 2015 U.S. Dist. LEXIS 65063, at * 15-16. But this case involves due process and getting a fair trial. Substantial rights indeed.

Second, it cited *Ford v. Hamilton Invs., Inc.*, 29 F.3d 255, 259 (6th Cir. 1994). (SPA4). *Ford* did not involve any allegation of a securities law violation. It was a wrongful termination case. *Id*.

Third, the district court cited *Intervest Intern. Equities Corp. v. Aberlich*, 3013 WL 1316997, at *4 (E.D. Mich. Mar. 29, 2013). (SPA4). This case only involved state law claims with a general allegation that "FINRA violated its own rules during the exercise of its regulatory functions." *Id*., at * 14. *Invervest* stated that "the Sixth Circuit foreclosed this argument," citing *Ford v. Hamilton Inv.*, 29 F.3d 255, 259 (6th Cir. 1994). The Second Circuit dismissed the reasoning of *Ford* in *NASDAQ OMX Group, Inc.* 770 F.3d, at 1030.

Fourth and fifth, it referenced *Dreyfus Serv. Corp. v. Gold*, 2002 WL
31802347, at *1 (S.D.N.Y. Dec. 12, 2002) and *Appl. Of Prudential Sec. Inc.*, 795
F. Supp. 657, 659 (S.D.N.Y. 1992). (SPA4). These cases relied on *Greenberg,
Westmoreland*, and *Drexel Burnham* – the latter two being abrogated by *Vaden*.
And all of which are now controlled by *NASDAQ OMX Group, Inc.*

Last, a six year old decision from the Southern District of Texas is cited,
*Apollo Property Partners, LLC v. Newedge Fin., Inc.*, 2009 WL 778108, at *2 &
n.14 (S.D. Tex. Mar. 20, 2009). This case involved an "arising under" section 1331
question and not a "manifest disregard" of federal law. It is of no significance for
this case.

In this Circuit, *NASDAQ OMX Group, Inc.* held that a violation of a self-
regulatory organization's internal rules is a question of federal law and found
subject matter jurisdiction when only state law claims were presented. A few
months after the *NASDAQ OMX Group* decision, a district court denied a motion
to vacate on the sole basis of a "manifest disregard" of a FINRA Rule. *NDA
Investment Company v. Apex Clearing Corporation*, 2015 U.S. Dist. LEXIS 3810,
14cv923-RMB (Jan. 8. 2015). No diversity jurisdiction in this case.  No
"independent basis" for jurisdiction. No discussion of subject matter jurisdiction.
Just whether the arbitrators "manifestly disregarded" Rule 12504. *Id.* And The
Ninth Circuit held that Section 78aa conferred exclusive jurisdiction on the district

court because the central question is a case was whether FINRA Rules were violated. *Sacks v. Dietrich*, 663 F.3d 1065, 1069 (9th Cir. 2011).

FINRA is a self-regulatory authority duty-bound to provide a fair and just arbitration process to its members. Members are required to arbitrate their disputes because of federal law. Petitioner asserts the arbitration award may be vacated because FINRA Rules were violated. The district court has subject matter jurisdiction in this case.

### D. Judicial Efficacy Demands a Bright-Line Rule for Section 10 Petitions.

#### 1. *Greenberg* is Not the Answer.

Anything less than a reversal in this case would be detrimental to future litigants. They would continue to operate with uncertainty regarding this issue. *Greenberg* provides a district court only has subject matter jurisdiction in a Section 10 case if there is diversity jurisdiction, a claim in admiralty, or the case "involves a substantial federal question" – that the arbitration "concerns issues of federal law" is not enough. *Greenberg*, 220 F.3d, at 26. It does so based solely on *Westmoreland*. And to make that determination:

> Courts must make principled, pragmatic distinctions, engaging in a selective process which picks the substantial causes out of the web and lays the other ones aside.

*Id.*, quoting *Barbara v. New York Stock Exch., Inc.*, 99 F.3d 49, 54 (2d Cir. 1996).

Such a standard lacks clarity for persons aggrieved by an arbitration decision. That effectively gives district judges broad discretion to pick and choose which cases to determine and which to discard.

In the recent high profile case involving the suspension of NFL quarterback Tom Brady, *NFL Mgmt. Council v. NFL Players Ass'n,* 2015 U.S. Dist. LEXIS 119283 (S.D.N.Y. Sept. 3, 2015), there was no question about subject matter jurisdiction – a petition to vacate an arbitration decision under Section 301 of the LMRA, 29 U.S.C. § 185. *Id*., at *2. If *Greenberg* were followed, the court lacked subject matter jurisdiction to vacate the suspension. There were no "substantial federal questions" at stake when determining whether the NFL's process was fair to Tom Brady. Yet that district court delivered a forty page opinion in vacating the arbitration decision. Judge Berman found that the lack of statutory provisions for discovery techniques does not negate the affirmative duty of arbitrators to ensure relevant documentary evidence in the hands of one party is fully and timely made available to the other. *Id*., at *60. Failing to discharge this simple duty constitutes a violation of FAA § 10(a)(3). *Id*., quoting *Home Indemnity Co.* So too in this case.

Like Tom Brady, Petitioner's case has an independent jurisdictional basis from the FAA – § 78aa. Like Tom Brady, the arbitrators failed to hear "evidence plainly pertinent and material to the controversy." *Id*., at *59, *citing Tempo Shain*.

*Corporation v. Bertek*, 120 F.3d 16, 19 (2d Cir. 1997). Like Tom Brady,

Petitioner's arbitration decision should be vacated. By a federal district court.

Continued manifestation of *Greenberg* as authority may even result in the

parties never reaching any review, given the limited period of time to petition the

courts to review arbitration decisions under both federal and state law. New York's

"savings statute" grants a party six months to refile a case after a non-merits

dismissal. NY CPLR § 205(a). This statute is applicable to the dismissal of a

petition to vacate an arbitration award for lack of subject matter jurisdiction.

*Hakala v. Deutsche Bank AG*, 343 F.3d 111, 116 (2d Cir. 2003). But would a New

York state court have subject matter jurisdiction over this case that involves a 10b-

5 securities fraud claim? *See Fiero*, 10 N.Y. 3d, at 17 (§78aa vests federal district

courts with exclusive jurisdiction to entertain suits for violations of the Exchange

Act and its implementing rules). Dismissal of this case will no doubt trigger years

of litigation over that issue before reaching a decision on the merits.

The recent rationale for invoking *Greenberg* to dismiss case for lack of

subject matter jurisdiction is also intellectually dishonest. Utilizing *Greenberg*

after *Vaden* necessarily requires a disingenuous argument:

- Before *Vaden*, *Westmoreland* (Section 4) and *Greenberg* (Section 10) were the standard in the Second Circuit

- *Vaden* unquestionably abrogated *Westmoreland*.

- But both *Vaden* and *Westmoreland* only involved Section 4 of the FAA.

- Section 4 contains the "save for" clause that is not present in Section 10.

- *Greenberg* is a Section 10 case.

- Thus *Vaden* does not affect *Greenberg* as controlling authority

Except *Greenberg* exclusively relied on *Westmoreland* to reach its determination.

It was not "arguably the primary basis," as suggested by the district court. (SPA6).

It was the only basis:

> The holding in *Westmoreland* logically extends to motions to vacate an arbitration award under § 10 of the FAA. Indeed, we implied as much in *Westmoreland* itself, *see* 100 F.3d at 268, and other courts have explicitly so held, *see, e.g.*, *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 334 U.S. App. D.C. 280, 166 F.3d 1243, 1247 (D.C. Cir. 1999); (others omitted). **As with a motion under § 4**, the only federal rights that a motion under § 10 necessarily implicates are those created by the FAA itself, which rights do not give rise to federal question jurisdiction. **In both contexts**, there is no necessary link between the requested relief and the character of the underlying dispute.

*Greenberg*, 220 F.3d, at 26 (emphasis supplied).

*Greenberg* held: "the holding in *Westmoreland* logically extends to motions to vacate an arbitration award under § 10 of the FAA." But *Westmoreland* is no longer the standard for Section 4 cases after *Vaden*. So neither is *Greenberg*.

### 2.    *Vaden* Shows The Way.

Vaden effectively terminated *Greenberg* as any authority. Yet it still lingers as authority – zombie-like 6 years later – laying waste to litigants seeking redress

in the federal courts.  It is time to give *Greenberg* a proper funeral and put it to rest.

Much ado has been made of the "jurisdictional hook" *Vaden* focuses on in Section 4 – the "save for [the arbitration] agreement" language.  *Vaden*, 556 U.S., at 62. Language not contained in Section 10. The majority opinion explained:

> The phrase "save for [the arbitration] agreement" indicates that the district court should assume the absence of the arbitration agreement and determine whether "it would have jurisdiction under title 28" without it. [citation omitted]. Jurisdiction over what? The text of § 4 refers us to "the controversy between the parties."  That phrase, the Fourth Circuit said, and we agree, is most straightforwardly read to mean the "substantive conflict between the parties."

*Id*.

So instead of enlarging jurisdiction, Section 4 "confines federal courts to the jurisdiction they would have "save for [the arbitration] agreement." *Id*., at 66. Section 10(a)(3) allows an award to be vacated if the arbitrator refused to hear evidence "pertinent and material to the controversy." But what controversy? "Obviously the 'controversy' subject to the arbitration, or the arbitrator's refusal to consider the evidence would hardly be objectionable" – as pointed out by Justice Roberts in dissent. *Id*., at 74.

The "save for" language is a restriction on jurisdiction in Section 4 not present in Section 10. The lack of the "save for" language in Section 10 simply means that court **can also** consider the arbitration agreement for jurisdictional purposes. Section 4 allows a party to:

petition any United States district court which, **save for such agreement**, would have jurisdiction under Title 28 [28 USCS §§ 1 et seq.], in a civil action or in admiralty of the subject matter of a suit **arising out of the controversy between the parties**, for an order directing that such arbitration proceed in the manner provided for in such agreement.

The *Drexel* case delivered a dissertation on how history says the "save for" clause was to prevent ousting federal courts of jurisdiction by agreement. *Drexel*, 696 F. Supp., at 960-965. But *Vaden* eviscerated this justification as being "textually implausible." *Vaden*, 556, U.S., at 65. Connecting the "save for" language to the ancient problem of "ouster jurisdiction" was imaginative – but completely unfounded and historically inaccurate. *Id.*

Now compare the opening langue of Section 10(a):

In **any** of the following cases **the United States court** in and for the district wherein the award was made **may make an order vacating the award** upon the application of any party to the arbitration –
　　　　(1), (2), (3), or (4)……..

Some post-*Vaden* courts now claim that the *absence* of the "save for" language in Section 10 means the reasoning in *Westmoreland* (a Section 10 case) **still** applies. But as explained *infra*, omission of the "save for" language logically results in a less restrictive circumstance.

*Greenberg* and the cases from other Circuits on which the district court rests generally hold that jurisdiction exists in diversity cases but not for federal question occasions. *Greenberg*, 220 F.3d, at 25-26. Only if the petition itself presents a

"substantial" federal question. *Id*. A court is not permitted to "look through" to the underlying dispute – just stick with the well-pleaded petition. *Id*.

But does not diversity jurisdiction also require the court to "look through" to the underlying complaint to determine the jurisdictional amount at stake? A Section 10 petition to vacate never involves a monetary claim. If justified, a district court may only vacate the prior decision and remand for another arbitration. It may not award anything as to the merits of the dispute.

Section 10 does not say "only in diversity cases." It does not say "only in maritime cases." It says in "any of the following cases…." And what cases would that be? *Vaden* clearly directs those cases where district courts would have subject matter jurisdiction over "the controversy between the parties." Like diversity cases. Like maritime cases. Like securities cases.

## CONCLUSION

Analyzing the rationale for courts determining *Greenberg* remains good authority to dismiss a petition to vacate an arbitration award case for lack of subject matter jurisdiction is like peeling through an onion. As you work through the layers, there are common foundational elements at the core – *Westmoreland*. *Drexel*. *Prudential-Bach Securities*. All were extinguished as authority by *Vaden*.

But after *Vaden*, this is an untenable result. After *Vaden*, a district court has subject matter jurisdiction for the purposes of a Section 10 motion to vacate when

the underlying dispute could have been brought in federal court – be that based on diversity, maritime law, or federal question.  Petitioner's 10b-5 claim satisfies that criteria. This is separate and in addition to whether there is an "independent basis" for jurisdiction exists apart from the FAA – like §78aa for securities claims as in this case. And separate and in addition to whether a substantial issue of federal law exists in the case – like violation of FINRA Rules as in this case. Here, all three are present.

A clear standard should be now entered. A standard consistent with *Vaden*. Consistent with statutory construction. And consistent with fairness for the litigants that district courts can evenly apply in the future. The district court has subject matter jurisdiction in this case. The judgment below should be reversed.

Dated:      Atlanta, Georgia
           October 27, 2015

Respectfully submitted,


_____/s/ A. Todd Merolla_____
A. Todd Merolla (AM 6938)
MEROLLA & GOLD, LLP
75 14th Street, Suite 2130
Atlanta, Georgia  30309
Tel.: 404-888-3772
Fax: 404-888-3737
atm@merollagold.com

Attorneys for Petitioner-Appellant
DREW DOSCHER

CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)

The undersigned attorney, A. Todd Merolla, hereby certifies that this brief complies with the type-volume limitations of FRAP 32(a)(7). According to the word processing system used by this office, this brief, exclusive of the title page, table of contents, statement with respect to oral argument, any addendum containing statutes, rules or regulations, and any certificates of counsel, contains 13,911 words.

_____/s/ A. Todd Merolla_____
A. Todd Merolla (AM 6938)
MEROLLA & GOLD, LLP
75 14th Street, Suite 2130
Atlanta, Georgia 30309
Tel.: 404-888-3772
Fax: 404-888-3737
atm@merollagold.com

Attorneys for Petitioner-Appellant
DREW DOSCHER

# SPECIAL APPENDIX

# TABLE OF CONTENTS

*Pages*

Memorandum Opinion and Order of the Hon. Jesse M.
Furman, dated August 5, 2015 ...................................................... SPA1-SPA10

Judgment dated August 7, 2015 ................................................................ SPA11

Notice of Appeal dated September 3, 2015 ............................................... SPA12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                    :

DREW DOSCHER,                              :
                                                    :

                                Plaintiff,          :

                  -v-                        :

SEA PORT GROUP SECURITIES, LLC, et al.,  :
                                                    :

                         Defendants.       :
                                                    :
-----------------------------------------------------------------------X

15-CV-384 (JMF)

<u>MEMORANDUM OPINION
AND ORDER</u>

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/05/2015

JESSE M. FURMAN, United States District Judge:

      Petitioner Drew Doscher brings suit against Respondents Sea Port Group Securities,

LLC, Stephen Smith, Michael Meagher, Michael Meyer, The Seaport Group, LLC, Armory

Advisers, LLC, Armory Fund, LP, and Seaport V, LLC pursuant to Section 10 of the Federal

Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, seeking to vacate in part an arbitral decision

by the Financial Industry Regulatory Authority ("FINRA").  For the reasons that follow,

Doscher's Petition is dismissed for lack of subject-matter jurisdiction.

## BACKGROUND

      The relevant background can be summarized briefly.  From 2009 to 2013, Doscher

worked for The Seaport Group, LLC and its broker-dealer, Sea Port Group Securities, LLC

(together, "Seaport"), both of which are Members of FINRA.  (Decl. A. Todd Merolla (Docket

No. 17) ("First Merolla Decl."), Ex. 27 at 12, 16; *see id.*, Ex. 2 at ¶¶ 1-2.)  As such, Doscher and

Seaport are "Associated Persons"— that is, "person[s] engaged in the investment banking or

securities business who [are] directly or indirectly controlled by a FINRA member," *see* FINRA,

*Dispute Resolution Glossary*, https://www.finra.org/arbitration-and-mediation/dispute-

resolution-glossary — and disputes between them are therefore subject to mandatory arbitration under FINRA's rules, *see* FINRA Rule 13200, *available at* http://finra.complinet.com/en/ display/display_main.html?rbid=2403&element_id=4203.

In June 2013, after he severed ties with Seaport, Doscher commenced an arbitration against Seaport and the individual Respondents, who owned or worked at Seaport. (Resp'ts' Resp. Pet'r's Statement Material Facts (Docket No. 39) ("Resp'ts' 56.1 Statement") ¶ 1; First Merolla Decl., Ex. 2). In his initial statement of claim, Doscher alleged, among other things, breach of contract, retaliatory discharge, and unjust enrichment. (First Merolla Decl., Ex. 2 at 16-17, 19). Thereafter, Doscher filed an amended statement adding a claim for securities fraud under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5. (Resp'ts' 56.1 Statement ¶ 4; First Merolla Decl., Ex. 5 at 21-22). Doscher sought damages in excess of $15 million. (First Merolla Decl., Ex. 1 at 2). On October 22, 2014, the arbitral panel ruled in his favor, but awarded him only $2,289,774, as well as a commission on a potential trade should it eventually settle. (*Id.* at 3). Thereafter, Doscher commenced this case by filing a petition to vacate in part the arbitration award pursuant to Section 10 of the FAA. (Pet. To Vacate and Modify Arbitration Award (Docket No. 1) ("Petition")).[1]

In his Petition, Doscher argues that the arbitration should be vacated in part for two reasons. First, Doscher contends that the arbitration should be vacated pursuant to Section 10(a)(3) of the FAA because the arbitrators "refused to insure [*sic*] that relevant documentary

---

[1]      In addition, Doscher has filed suit in New York State Supreme Court alleging a violation of Section 487 of New York's Judiciary Law. (Resp'ts' Opp'n Pet. To Vacate & Modify In Part FINRA Arbitration Award & Supp. Confirming Award (Docket No. 35) ("Resp'ts' Mem.") 13; Pet'r's Reply Mem. Law Supp. Pet. To Vacate & Modify Arbitration Award (Docket No. 41) ("Pet'r's Reply Mem.") 6 n.3).

evidence in the possession, custody, and control of the Respondents and their counsel were fully and timely made available to him." (Pet'r's Mem. Law Supp. Pet. To Vacate & Modify Arbitration Award (Docket No. 32) ("Pet'r's Mem.") 6; *see also id.* at 16-17). Additionally (but relatedly), Doscher asserts that "the arbitrators acted in 'manifest disregard' of the law" — specifically, FINRA Rule 13505, which requires parties to "cooperate to the fullest extent practicable in the exchange of documents and information to expedite the arbitration." (*Id.* at 6; *see also id.* at 23).

## SUBJECT-MATTER JURISDICTION

The Court begins, as it must, with the issue of subject-matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).[2] As noted, Doscher brings his Petition pursuant to Section 10 of the FAA. The FAA, however, is "something of an anomaly in the realm of federal legislation: It bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (internal quotation marks omitted). In other words, "federal question jurisdiction does not arise simply because a petitioner brings a claim under . . . the FAA." *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 25 (2d Cir. 2000). Instead, a district court must have "an independent jurisdictional basis" to entertain a petition to vacate an arbitration. *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). Here, because the

---

[2]     In his reply memorandum, Doscher contends that the Court should ignore Respondents' argument that the Court lacks subject-matter jurisdiction on the ground that their memorandum violates the Court's page-length limitations by incorporating an earlier filing in this case by reference. (Pet'r's Reply Mem. 3 n.2 (citing *Flaherty v. Filardi*, No. 03-CV-2167 (LTS) (HBP), 2009 WL 749570, at *20 (S.D.N.Y. Mar. 20, 2009)). Whether Respondents' submissions comply with the Court's rules or not, however, the Court has an independent obligation to examine whether it has subject-matter jurisdiction. *See, e.g.*, *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 213 (2d Cir. 2014).

parties are not diverse (*see* First Merolla Decl., Ex. 2 ¶¶ 1-10), the only conceivable basis for

jurisdiction — and the only basis proffered by Doscher (Petition ¶ 16; Pet'r's Mem. 12-13) — is

Title 28, United States Code, Section 1331, which grants the Court jurisdiction over "all civil

actions arising under the Constitution, laws, or treaties of the United States."  In particular,

Doscher contends that that the Court has jurisdiction both because he alleges that the arbitral

panel violated the FINRA Rules and those Rules "are substantive federal law" and because he

pursued claims under federal law — namely, the Securities Exchange Act and federal regulations

— in the underlying arbitration.  (Pet'r's Mem. 12-13).

The first contention — that the arbitral panel's alleged disregard or violation of FINRA

Rules gives rise to federal-question jurisdiction — is easily rejected.  As many courts have held

with respect to petitions to vacate arbitration awards from FINRA or its predecessor

organization, the National Association of Securities Dealers ("NASD"), allegations that an

arbitration panel "manifestly disregarded" FINRA or NASD Rules "do not constitute a valid

claim for manifest disregard of federal law."  *Goldman v. Citigroup Global Markets Inc.*, No. 12-

CV-4469 (ABB), 2015 WL 2377962, at *4 (E.D. Pa. May 19, 2015); *see Ford v. Hamilton Invs.,*

*Inc.*, 29 F.3d 255, 259 (6th Cir. 1994); *Intervest Intern. Equities Corp. v. Aberlich*, No. 12-CV-

13750 (DPH), 2013 WL 1316997, at *4 (E.D. Mich. Mar. 29, 2013); *Dreyfus Serv. Corp. v.*

*Gold*, No. 02-CV-9415 (LAK), 2002 WL 31802347, at *1 (S.D.N.Y. Dec. 12, 2002); *Appl. of*

*Prudential Sec. Inc.*, 795 F. Supp. 657, 659 (S.D.N.Y. 1992); *see also Apollo Property Partners,*

*LLC v. Newedge Fin., Inc.*, 08-CV-1803 (EW), 2009 WL 778108, at *2 & n.14 (S.D. Tex. Mar.

20, 2009) ("As many courts have held, a breach of NASD rules is simply a breach of a private

association's rules, although that association is one which is closely related to the SEC, and

therefore does not present a question which arises under the laws of the United States." (internal

**SPA5**

quotation marks omitted) (citing cases)).  As those courts have explained, FINRA's rules "are

established and enforced by a private association," so they "do not give rise to federal question

jurisdiction."  *Prudential*, 795 F. Supp. at 659.  Accordingly, Doscher's claim that the arbitral

panel violated or disregarded FINRA Rules does not constitute a federal question for purposes of

Section 1331.

     Doscher's alternative argument for subject-matter jurisdiction — based on the fact that he

pursued claims under the Exchange Act and SEC Regulations in the underlying arbitration — is

also easily rejected, as it is squarely foreclosed by the Second Circuit's decision in *Greenberg*.

In that case, the petitioner sought to vacate an arbitration award that had dismissed his federal

securities fraud claims against a clearing broker.  On appeal, the Second Circuit held that, in

determining whether there is jurisdiction over a petition to vacate an arbitration award brought

pursuant to Section 10 of the FAA, a court may not "look through" the petition to the claims in

the underlying arbitration.  *See* 220 F.3d at 25-26.  The Court cited *Westmoreland Capital Corp.

v. Findlay*, 100 F.3d 263 (2d Cir. 1996), in which it had ruled that there is no subject-matter

jurisdiction over a petition to compel arbitration under Section 4 of the FAA "'merely because

the underlying claim raises a federal question.'"  *Id.* at 26 (quoting *Westmoreland*, 100 F.3d at

268).  "The holding in *Westmoreland*," the Court explained, "logically extends to motions to

vacate an arbitration award under § 10 of FAA. . . .  Accordingly, the fact that the arbitration

concerns issues of federal law does not, standing alone, confer subject matter jurisdiction on a

federal district court to review the arbitral award."  *Id.*

     In arguing otherwise (Pet'r's Mem. 12-13; Pet.'s Reply Mem. 3 n.2), Doscher relies

exclusively on the Supreme Court's 2009 decision in *Vaden*, which held that, with respect to

petitions to compel arbitration under Section 4 of the FAA, federal courts may in fact "'look

through' [the] petition to determine whether it is predicated on an action that 'arises under'

federal law." 556 U.S. at 62. In fairness, *Vaden* does raise doubts about the validity of

*Greenberg*. After all, *Vaden* abrogated the Second Circuit's decision in *Westmoreland*, *see id.*

at 57, and, as noted, the holding in *Westmoreland* was the basis — indeed, arguably the primary

basis — for the Court's conclusion in *Greenberg*.[3] This Court, however, must follow *Greenberg*

unless and until it is overruled in a precedential opinion by the Second Circuit itself or "unless a

subsequent decision of the Supreme Court so undermines it that it will almost inevitably be

overruled by the Second Circuit." *United States v. Emmenegger*, 329 F. Supp. 2d 416, 429

(S.D.N.Y. 2004).[4] Thus, "[t]he precise question for this Court . . . is not whether, by its own

analysis," *Vaden*'s reasoning supports a finding that a federal court may "look through" a

petition to vacate under Section 10 of the FAA to determine if there is federal-question

---

[3]      Moreover, in *Westmoreland*, the Court observed that allowing a court to "look through" a petition to compel under Section 4, but not a petition to vacate under Section 10, "would truly be 'bizarre,' because '[t]he interest of the federal court in determining whether the arbitration award was entered in manifest disregard of the federal law . . . would seem to be far greater than the federal interest in seeing that the claims could be arbitrated.'" 100 F.3d at 268 (quoting *Drexel Burnham Lambert, Inc. v. Valenzuela Bock*, 696 F.Supp. 957, 963 (S.D.N.Y. 1988)). Other courts, however, have taken a different view, reasoning that it is not "necessarily anomalous for Congress to have intended that federal courts take jurisdiction for purposes of a motion to compel where the underlying dispute is federal, but not take jurisdiction on a parallel motion to vacate. The primary purpose of the Arbitration Act was to reverse the centuries of judicial hostility to arbitration agreements, by placing arbitration agreements upon the same footing as other contracts. The central federal interest was enforcement of agreements to arbitrate, not review of arbitration decisions." *Minor v. Prudential Sec., Inc.*, 94 F.3d 1103, 1106-07 (7th Cir. 1996) (internal citations and quotation marks omitted).

[4]      In *Bittner v. RBC Capital Markets*, 331 F. App'x 869, 871 (2d Cir. 2009) (summary order), the Second Circuit "assum[ed], *arguendo*," that *Vaden* authorized a district court to "look through" a petition to vacate. More recently, in *Giusti v. Morgan Stanley Smith Barney, LLC*, 581 F. App'x 34, 35 (2d Cir. 2014) (summary order), the Court stated, quoting *Vaden* but otherwise without analysis, that "[f]ederal courts may 'look through' a petition to vacate an arbitration award to assess whether, 'save for the arbitration agreement,' the court would have jurisdiction over 'the substantive controversy between the parties.'" Since *Vaden*, the Second Circuit does not appear to have addressed the issue in a precedential opinion, let alone *en banc*.

jurisdiction.  *Id.*  Instead, "it is whether [*Vaden*] so conclusively supports that finding that the Second Circuit or the Supreme Court is all but certain to overrule [*Greenberg*]."  *Id.*; *see also Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003) (noting that district courts and the Second Circuit itself are "required to follow" a Second Circuit decision, even if it is in "tension" with subsequent Supreme Court precedent, "unless and until that case is reconsidered by [the Second Circuit] sitting in banc (or its equivalent) or is rejected by a later Supreme Court decision"); *United States v. Wong*, 40 F.3d 1347, 1373 (2d Cir. 1994) ("[U]ntil the Supreme Court rules otherwise, the district court would be obliged to follow our precedent, even if that precedent might be overturned in the near future.").

The Court cannot say that, in light of *Vaden*, "the Second Circuit or the Supreme Court is all but certain to overrule" *Greenberg*.  *Emmenegger*, 329 F. Supp. 2d at 429.  The Supreme Court's holding in *Vaden* was based primarily on the text of Section 4, which provides that a party may petition to compel arbitration in "any United States district court which, save for [the arbitration] agreement, would have jurisdiction under title 28 . . . of the subject matter of a suit arising out of the controversy between the parties."  9 U.S.C. § 4; *see* 556 U.S. at 62 ("The text of § 4 drives our conclusion that a federal court should determine its jurisdiction by 'looking through' a § 4 petition to the parties' underlying substantive controversy. . . .  The phrase 'save for [the arbitration] agreement' indicates that the district court should assume the absence of the arbitration agreement and determine whether it 'would have jurisdiction under title 28' without it.").  Section 10 of the FAA, however, does not include the critical phrase "save for [the arbitration] agreement" or anything similar.  In light of that textual difference, some courts had held, even before *Vaden*, that while federal courts could perhaps "look through" a petition to compel under Section 4 in determining jurisdiction, they could not do so with respect to a

petition to vacate under Section 10.  *See, e.g.*, *Minor*, 94 F.3d at 1106-07; *see also Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1246-47 (D.C. Cir. 1999) (assuming, *arguendo*, that the "save for" language in Section 4 permitted a court to assert jurisdiction over a petition to compel based on a federal question presented in the underlying dispute, but concluding that the absence of equivalent language in Section 10 precluded a court from looking to the underlying dispute to establish jurisdiction over a petition to vacate).

Even more significant, several courts have reached that same conclusion in the wake of *Vaden*, reasoning that the Supreme Court's decision "rested on language specific to § 4 that does not appear in . . . [§] 10."  *Royal Bank Am. v. Kirkpatrick*, Nos. 11-CV-1058, 11-CV-1112 (TJS), 2011 WL 4528349, at *3 n.5 (E.D. Pa. Sept. 30, 2011); *see, e.g.*, *Goldman*, 2015 WL 2377962, at *3 & n.7 (applying *Greenberg*); *Crews v. S & S Serv. Ctr. Inc.*, 848 F. Supp. 2d 595, 599-600 (E.D. Va. 2012) (declining to "apply the 'look through' test to § 10, because the 'unique jurisdictional language' of § 4 that gave rise to the test is absent in § 10"); *Sonic Auto., Inc. v. Price*, No. 10-CV-382 (RLV), 2011 WL 3564884, at *8 (W.D.N.C. Aug. 12, 2011) (applying *Greenberg*); *see also Trustees of Local Union No. 580 of Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers Employee Ben. Funds v. Gen. Fence Corp.*, No. 13-CV-6006 (SJF) (WDW), 2014 WL 1800428, at *11 (E.D.N.Y. May 5, 2014) ("[T]he look-through doctrine is, at this time, limited to petitions to compel arbitration under FAA § 4 and *Greenberg*'s reasoning is still applicable outside that context.").  Thus, while it is certainly fair to say that "a question exists as to whether the *Greenberg* jurisdictional reasoning is in fact abrogated by *Vaden*," *Gen. Fence Corp.*, 2014 WL 1800428, at *11, the Court cannot say that the Supreme Court's decision in *Vaden* renders the holding of *Greenberg* "untenable," *Emmenegger*, 329 F. Supp. 2d at 436.  It follows that the Court is bound by *Greenberg* and may

not assert jurisdiction based on Doscher's claims in the underlying arbitration.  Accordingly, the Petition must be and is dismissed for lack of subject-matter jurisdiction.[5]

### THE PARTIES' REQUESTS TO FILE DOCUMENTS UNDER SEAL

Finally, the Court turns to the parties' requests to file certain documents under seal or in redacted form.  Given the Court's conclusion that it does not have jurisdiction over this case, it did not consider the merits of the parties' disputes and therefore did not consider the documents at issue.  "In light of the fact that the Court did not need to consider those submissions, the right of public access does not call for disclosure."  *Ross v. AXA Equitable Life Ins. Co.*, — F. Supp. 3d —, No. 14-CV-2904 (JMF), 2015 WL 4461654, at *11 n.3 (S.D.N.Y. July 21, 2015); *accord In re General Motors LLC Ignition Switch Litig.*, Nos. 14-MD-2543 (JMF), 14-MC-2543 (JMF), 2015 WL 4522778, at *7 (S.D.N.Y. July 24, 2015); *see also, e.g.*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (noting that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access" and that "the item filed must be relevant to the performance of the judicial function and useful in the judicial process" (internal quotation marks omitted)).  Accordingly, the parties' requests to file certain documents under seal or in redacted form are granted.  Within **one week**, the parties shall file with the Court's Sealed Records office unredacted versions of any documents for which redacted copies are available on the docket.  By the same date, any

---

[5]     In their memorandum, Respondents invited the Court, in the event it concluded that there was jurisdiction over Doscher's petition, to issue an order confirming the arbitration award under Section 9 of the FAA.  (Resp'ts' Mem. 25).  Given that the Court has determined that it lacks jurisdiction, Respondents' request is arguably moot.  In any event, Respondents make no effort to establish that the Court would have subject-matter jurisdiction over a stand-alone petition to confirm under Section 9, which also lacks Section 4's "unique jurisdictional hook."  *Crews*, 848 F. Supp. 2d at 600.  Accordingly, the Court declines Respondents' invitation.

documents that were previously submitted to the Court, but not filed with the Sealed Records office, shall also be submitted to the Sealed Records office.

**CONCLUSION**

For the reasons stated above, Doscher's petition to vacate the arbitration is dismissed for lack of subject-matter jurisdiction.  The Clerk of the Court is directed to terminate Docket No. 31 and to close the case.

SO ORDERED.

Date:   August 5, 2015
       New York, New York

                                  JESSE M. FURMAN
                           United States District Judge

10

SPA11

DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8/7/2015_

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

DREW DOSCHER,

                     Petitioner,

        -against-

SEA PORT GROUP SECURITIES, LLC, et al.,

                    Respondents.

----------------------------------------------------------X

15 **CIVIL** 384 (JMF)

**JUDGMENT**

      Petitioner Drew Doscher having brought this action against Respondents Sea Port Group

Securities, LLC, Stephen Smith, Michael Meager, Michael Meyer, The Seaport Group, LLC,

Armory Advisers, LLC, Armory Fund, LP, and Seaport V, LLC pursuant to Section 10 of the

Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., seeking to vacate in part the arbitral decision

by the Federal Industry Regulatory Authority ("FINRA"), and the matter having been brought before

the Honorable Jesse M. Furman, United States District Judge, and the Court, on August 5, 2015,

having issued its Memorandum Opinion and Order dismissing Doscher's petition to vacate the

arbitration for lack of subject-matter jurisdiction, and directing the Clerk of the Court to close the

case, it is,

      **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Memorandum Opinion and Order dated August 5, 2015, Doscher's petition to vacate

arbitration is dismissed for lack of subject-matter jurisdiction; accordingly, the case is closed.

**Dated:**  New York, New York
        August 7, 2015

                        **RUBY J. KRAJICK**

                         Clerk of Court

           BY:

                         Deputy Clerk

        **THIS DOCUMENT WAS ENTERED**
        **ON THE DOCKET ON** _____

**SPA12**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
DREW DOSCHER,

                                          Civil Action No. 15-cv-384

                Petitioner,

      -against-

                                     **NOTICE OF APPEAL**

SEA PORT GROUP SECURITIES, LLC,
STEPHEN SMITH,
MICHAEL MEAGHER,
MICHAEL MEYER,
THE SEAPORT GROUP, LLC,
ARMORY ADVISERS, LLC,
ARMORY FUND, LP, and
SEAPORT V, LLC,

                Respondents.
------------------------------------------------------------x

      Please take notice that Petitioner hereby appeals to the United States Court of

Appeal for the Second Circuit from the August 5, 2015 Memorandum Opinion and Order

dismissing Plaintiff's petition to vacate and modify an arbitration decision (Doc. No. 54),

as well as from the subsequent Judgment entered on August 7, 2015 (Doc. No. 55).


Dated: September 3, 2015
      Atlanta, Georgia                         /s/ A. Todd Merolla
                                    A. Todd Merolla (AM 6938)
                                    MEROLLA & GOLD, LLP
                                    75 14th Street, Suite 2130
                                    Atlanta, Georgia  30309
                                    Tel.: 404-888-3772
                                    Fax: 404-888-3737
                                    atm@merollagold.com

                                    Attorneys for Petitioner
                                    DREW DOSCHER

TO:   Ronald G. Blum, Prana A. Topper, Benjamin J. Wolfert
        Manatt, Phelps & Phillips, LLC
        7 Times Square
        New York, New York 10036
        Attorneys for Respondents